ANNIE L. McCARTHY, Respondent, *v.* MOTOR VEHICLE ACCIDENT INDEMNIFICATION CORPORATION, Appellant.

Fourth Department, February 22, 1962.

36

Bond, Schoeneck & King (John C. Kinney and Leslie H. Deming of counsel), for appellant.

Costello, Cooney & Fearon (Vincent A. O'Neil of counsel), for respondent.

HALPERN, J. The question here presented is this: May the Motor Vehicle Accident Indemnification Corporation be held liable, under its uninsured motorist indorsement, for injuries caused by an assault and battery committed by an insured motorist, where the insurance company covering the automobile was absolved from liability upon the ground that the assault and battery was not an accident within the meaning of the liability insurance policy?

It is undisputed that the plaintiff's injuries were caused by an assault and battery committed by her brother-in-law, David Branch. On October 18, 1959, the plaintiff was driving her automobile in the City of Syracuse, New York, with her sister as a passenger in the automobile. The plaintiff's sister had had a violent argument with her husband and the plaintiff was assisting her in escaping from him. Branch suddenly appeared in his own automobile and deliberately drove into the plaintiff's automobile for the purpose of stopping it. As a result of the intentional collision, the plaintiff suffered bodily injury. Branch was subsequently convicted of the crime of assault because of his action.

Branch's automobile was covered by a standard automobile liability policy issued by the United Services Automobile Association. The insurance carrier denied liability to the plaintiff upon the ground that the injuries were not "caused by accident" within the terms of the policy. The plaintiff recovered a default judgment against Branch in the Onondaga County Court in the amount of $3,000 and costs and thereafter commenced an action against Branch's insurance company under section 167 of the Insurance Law. The court granted summary judgment in favor of the defendant dismissing the complaint upon the ground that the insurance company was not liable for the plaintiff's injuries because they were not caused by accident. The correctness of the result reached in that action is not now questioned.

The plaintiff's automobile was also covered by a standard policy to which there was attached a MVAIC indorsement, which all liability insurance companies are required to add to their policies under subdivision 2-a of section 167 of the Insurance Law. Under this indorsement, the MVAIC agreed to pay the plaintiff for all injuries for which she was legally entitled to recover, "caused by accident", arising from the operation of an uninsured automobile.

After losing her action against Branch's insurance company, the plaintiff commenced the present action against the MVAIC, seeking a declaratory judgment that the MVAIC was liable

for the plaintiff's injury under the MVAIC indorsement attached to the plaintiff's policy.

The court below granted the plaintiff's motion for summary judgment, leaving only the question of the amount of the damages to be assessed. From that order, this appeal was taken.

The order of the court below cannot be permitted to stand. The MVAIC was set up in 1958 (Motor Vehicle Accident Indemnification Corporation Law, Insurance Law, art. 17-A; L. 1958, ch. 759) to fill the gaps in the compulsory automobile insurance plan which had been adopted by the State in 1956 (Motor Vehicle Financial Security Act, Motor Vehicle and Traffic Law, art. 6-A; L. 1956, ch. 655), arising from the fact that, notwithstanding the statute, some accidents might be caused by automobiles which had no insurance applicable to the accident or by "hit-and-run" motorists who could not be identified. The MVAIC Law was designed to afford a person injured in such an accident the same protection as he would have had if he had been injured in an accident caused by an identifiable automobile covered by a standard automobile liability insurance policy in effect at the time of, and applicable to, the accident. In the declaration of purpose in section 600 of the statute, it is explicitly stated, that "The legislature determines * * * that the public interest can best be served by closing such gaps in the motor vehicle financial security act [by creating the MVAIC]". The MVAIC Law was not designed to supplement the insurance coverage of insured automobiles or to protect injured persons against risks which were not covered by the standard automobile liability policies.

This is plain upon a reading of the statute itself; the conclusion is strengthened by a reference to the explanatory statements issued by the interested State departments and the members of the Legislature in advocating the passage of the act and by the Governor in recommending and approving it. (N. Y. Legis. Annual, 1958, pp. 244, 299, 436, 473; see, also, Ward, New York's Motor Vehicle Accident Indemnification Corp., 8 Buffalo L. Rev. 215, 230, 239.) There is not a shred of legislative history to support the view that the statute was designed to extend protection beyond that afforded by the standard liability insurance policies issued in the form approved by the Superintendent of Insurance.

As will be seen below, an assault and battery committed by the named insured by means of the use of an insured automobile is not within the ambit of the risks covered by the standard liability insurance policy. There was no intention on the part

of the Legislature to supplement the coverage of liability insurance policies by having the MVAIC cover the excluded risk.

The MVAIC is a corporation of which all the insurance companies authorized to write automobile liability insurance policies in New York State are required to be members (§ 602). Its funds are raised by assessment against the members (§ 607).

The statute adopted two devices to carry out its purpose. (1) Automobile owners who suffered personal injuries as the result of accidents caused by uninsured motorists were to be covered by an indorsement in the name of the MVAIC to be attached to their own insurance policies (Insurance Law, § 167, subd. 2-a); the indorsement was also to cover members of their families and others coming within the term "insured" as defined in the indorsement. (2) All others who were so injured and who came within the class of "qualified persons" defined in the statute were authorized to proceed against the MVAIC in the manner specified in the statute. (MVAIC Law, Insurance Law §§ 601, 608.)

We now turn to the language of the MVAIC indorsement upon which the plaintiff brought this action. The indorsement provides that the "MVAIC will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an *uninsured* automobile because of bodily injury * * * sustained by the insured, *caused by accident* and arising out of the ownership, maintenance or use of such *uninsured* automobile" (emphasis added). The indorsement was in the form approved by the Superintendent of Insurance pursuant to subdivision 2-a of section 167 of the Insurance Law.

In order to recover under this indorsement, the plaintiff had the burden of establishing (1) that the automobile which caused her injury was an uninsured one, and (2) that her injury was "caused by accident". The plaintiff's case was deficient in both respects.

(1) Branch's automobile was not an uninsured automobile. The term "uninsured automobile" is defined in the MVAIC indorsement, so far as here pertinent, as follows: "an automobile with respect to the ownership, maintenance or use of which there is, in the amounts specified in the New York Motor Vehicle Financial Security Act [no] bodily injury liability bond or insurance policy, applicable to the accident". In this case, there was in effect, at the time of the occurrence in question, a bodily injury liability insurance policy in the amount specified in the Motor Vehicle Financial Security Act appli-

cable to any accident in which Branch's automobile might be involved. The plaintiff's claim against Branch's insurance carrier was defeated, not because the insurance policy was not in full force and effect, but because the court found that the plaintiff's injuries had not been caused by an accident within the meaning of the policy. This finding did not convert Branch into an uninsured motorist or convert his automobile into an uninsured automobile within the meaning of the indorsement. All that an automobile owner is required to carry under the Motor Vehicle Financial Security Act is a policy of liability insurance in specified amounts insuring against liability for bodily injury '' caused by accident '', in the form specified by the '' Minimum Provisions for Automobile Liability Insurance Policies '' promulgated by the Superintendent of Insurance (N. Y. Off. Comp. of Codes, Rules & Regulations [13th Supp.], regulation 35-A, pp. 868–870). The MVAIC indorsement does not come into play until it is established that the automobile involved in the occurrence was not covered by a valid and enforcible policy of the kind required by the statute and regulations. Branch's automobile was covered by such a policy.

There was no disclaimer by the insurance company of liability under the terms of the policy for any accident for which Branch might be responsible. Returning to the words of the MVAIC indorsement, there was an outstanding policy '' applicable to the accident '', if the plaintiff could establish that there was an accident.

A disclaimer or denial of liability by an insurance company may place the automobile in the position of an uninsured automobile, within the meaning of the MVAIC indorsement, if, but only if, the effect of the disclaimer or denial is to deprive the injured person of the protection afforded by a standard automobile liability insurance policy. As used in the MVAIC Law, the term '' disclaimer or denial of liability '' means a repudiation of liability '' because of some act or omission of the person or persons liable or alleged to be liable '' (MVAIC Law, § 608, subd. [c]). This refers to an act or omission by the insured automobile owner in his relationship to his insurance company, constituting a breach of the conditions of the policy (cf. MVAIC Law, § 620). There was no disclaimer or denial on any such ground here.

A sharp differentiation must be made between (a) a finding that the insurance company is not liable under a valid policy because the injuries were not caused by accident and hence were not within the risks covered by the policy and (b) a finding that

the company is not liable because the policy was not in force at the time in question or because there had been a breach of a condition of the policy by the insured rendering it unenforcible. In the latter case, the finding establishes that no enforcible insurance policy was in effect at the time of the injury; hence the automobile was an uninsured automobile within the meaning of the MVAIC indorsement. In the former case, the finding recognizes that there was a standard insurance policy of the required type in force at the time which covered all the risks which were required to be covered; hence no uninsured automobile was involved and MVAIC could not be held liable.

(2) The plaintiff's injury was not "caused by accident". As has been stated, it was found by the court in the plaintiff's action against Branch's insurance carrier, and it is now undisputed, that her injury was caused by an assault and battery committed by the insured. The court correctly held in that action, that an injury caused by an assault and battery committed by the insured is not an accident within the meaning of a standard liability insurance policy (*Morgan* v. *Greater N. Y. Taxpayers Mut. Ins. Assn.*, 305 N. Y. 243; *De Luca* v. *Coal Merchants Mut. Ins. Co.*, 203 Misc. 261; *Farm Bureau Mut. Automobile Ins. Co.* v. *Hammer*, 177 F. 2d 793, cert. denied 339 U. S. 914).

This conclusion follows from the settled interpretation of the key words "caused by accident" in the principal insuring clause of the policy. It is further supported by the express provision required to be inserted in all New York automobile liability insurance policies that "Assault and Battery shall be deemed an accident unless committed by or at the direction of the insured". The necessary negative inference from this provision is that if an assault and battery is committed by or at the direction of the insured, it shall not be deemed an accident within the meaning of the policy.

The assault and battery clause is a clarification or restatement of the accepted judicial interpretation of the principal insuring clause of the policy. Even without the special clause, an assault and battery willfully committed by the named insured is obviously an intentional act and not an accident. Indeed, if the term "caused by accident" in the principal insuring clause of the policy were construed to include coverage for an assault by the named insured, it would be in conflict with the public policy of this State forbidding the coverage of the insured against his own criminal acts. (*Morgan* v. *Greater N. Y. Taxpayers Mut. Ins. Assn.*, 305 N. Y. 243, 248; *supra*; *Messersmith* v. *American Fid. Co.*, 232 N. Y. 161, 165.) On the

other hand, it has been held that, even without the special clause, an assault committed without the insured's consent or direction by the insured's employee or by some other person for whose conduct the insured is responsible, is an uncontemplated and unintended event from the insured's point of view and is therefore an accident within the meaning of the coverage of the insured by the policy (*Floralbell Amusement Corp.* v. *Standard Sur. & Cas. Co.*, 256 App. Div. 221). The special assault and battery clause confirms this holding by setting it forth explicitly in the policy.

It is thus the settled law of New York both by virtue of judicial interpretation of the term " caused by accident " and by virtue of the express assault and battery clause, that an injury caused by an assault and battery committed by the named insured himself is not an accident within the meaning of the policy.

The plaintiff does not dispute this conclusion but she argues that, even though the causing of injury to her by the assault and battery did not constitute an accident within the meaning of the liability insurance policy, it may be found to have been an accident within the meaning of the MVAIC indorsement. This cannot be so. As has been pointed out above, the purpose of the MVAIC statute is to give the same protection to a person injured by an uninsured motorist, as he would have had if he had been injured in an accident caused by an automobile covered by a standard liability insurance policy. The determination of the scope of the coverage of a standard policy is therefore controlling in determining the scope of the MVAIC coverage. They are, and under the scheme of the statute, they must be, coextensive.

The key words " Caused by accident " appear alike in the standard liability policy and in the MVAIC indorsement. The words must be given the same meaning in the policy and in the indorsement.

The words " caused by accident " or " motor vehicle accidents " appear throughout the Motor Vehicle Financial Responsibility Act, the MVAIC Law and subdivision (2-a) of section 167 of the Insurance Law. There is no provision in any of the statutes indicating a legislative intent to protect all victims of " motor vehicles ", regardless of how the vehicle may have been used as an instrument of injury. The legislative intent, as expressed in the MVAIC Law, is to protect the victims of " motor vehicle *accidents* " (§ 600 and *passim*, MVAIC Law).

The assault and battery clause discussed above must also be deemed to be applicable to the MVAIC indorsement. The

assault and battery clause is a part of the minimum provisions prescribed for an " owner's policy of liability insurance " in this State (reg. 35-A, § 1, par. f, issued by the Superintendent of Insurance, cited *supra*). The same regulation requires that every policy contain the standard MVAIC indorsement. The two provisions of the regulation must be read together. Therefore, even though the assault and battery clause was not expressly repeated in the MVAIC indorsement, it must be read into it. However, for the reasons given above, even if the assault and battery clause were not read into the indorsement, the result would be the same in excluding assault and battery by an automobile owner from the scope of coverage, both because of the judicial interpretation of the word " accident " in the context of liability insurance policies and because of the legislative purpose to make the scope of the coverage by liability insurance policies and by the MVAIC coextensive.

An argument is made that an assault and battery by automobile should be looked at from the standpoint of the victim, and not of the wrongdoer and that, from that standpoint, it should be regarded as an accident and should be covered by the standard automobile liability insurance policy. This argument should be addressed to the Legislature and not to the courts since, as has been pointed out above, the standard policy is explicit in excluding coverage of assault and battery. In any event, the argument has no relevance in this case. The argument relates to the amendment of the primary liability insurance policies and to the resulting liability of the insurance carriers, not to the liability of the MVAIC. A broadening of the coverage afforded by the standard automobile liability insurance policy would not give rise to any additional liability on the part of the MVAIC with respect to automobiles which were covered by standard liability insurance policies. The extended coverage would be the responsibility of the insurance carriers, not of the MVAIC.

For these reasons, the cases from other States cited in the dissenting opinion are not in point. They are all cases dealing with the liability of the primary insurance carriers under various forms of policies and under various insurance statutes. As we have seen, with respect to the primary insurance carriers, the law of New York is settled to the contrary of the holding of the cases cited. In any event, none of the cases deals with the liability of a corporation like the MVAIC. So far as we have been able to find, there is no case anywhere which supports the view that, where an insured automobile (covered by a standard policy) was used to inflict an assault and battery and the insur-

ance carrier was held not to be liable because the risk was of a type not covered by the policy, the liability falls upon a corporation or special fund like the MVAIC set up for the protection of persons injured by accidents caused by uninsured motorists. Such a use of the assets of the corporation or the special fund would distort the purpose for which the corporation or fund was set up and would divert its assets to a wholly unintended use.

A word should be added about the arbitration provision in the MVAIC indorsement. It provides that all matters upon which the claimant and the MVAIC do not agree shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, upon the written demand of either party. This provision applies to questions of liability as well as of damages (*Motor Vehicle Acc. Ind. Corp.* v. *Velez*, 14 A D 2d 276). However, neither party served a demand for arbitration in this case. Instead, the plaintiff sued for a declaratory judgment as to the liability of the MVAIC. The defendant made no motion to stay the action under section 1451 of the Civil Practice Act and made no request for arbitration. The defendant interposed an answer and thereafter both parties moved for summary judgment. It is true that, in the prayer for relief in the complaint, the plaintiff asked, in the alternative, for a direction that the defendant submit the issue of liability to arbitration but this is not a proper method of demanding arbitration under the arbitration provision of the indorsement, or under the Civil Practice Act (Civ. Prac. Act, § 1458). In this situation, the parties must be deemed to have waived arbitration (*Matter of Zimmerman* v. *Cohen*, 236 N. Y. 15, 19; *Matter of Travelers Ind. Co.* [*Sherwood*], 13 A D 2d 507).

The court below undertook to pass upon the issue of liability and decided it in favor of the plaintiff. Upon review, we pass upon the same issue and decide it in favor of the defendant.

The order appealed from should accordingly be reversed and the plaintiff's motion for summary judgment denied and the defendant's motion for summary judgment granted, and judgment should be entered, adjudging that the defendant is not liable for the plaintiff's claim.

GOLDMAN, J. (dissenting). Involved in this appeal is the construction of article 17-A of the Insurance Law which established the Motor Vehicle Accident Indemnification Corporation (hereinafter referred to as MVAIC). The recitation of facts in the prevailing opinion makes it unnecessary to set them forth here. At the outset it is clear that plaintiff is not collaterally estopped from recovering against MVAIC under her own policy

of insurance by reason of the prior adjudication with the tort-feasor's insurance carrier. Obviously the earlier judgment against a different carrier covering a different policy of insurance would not bar " a new proceeding to vindicate new rights ". (*Matter of Mullane* v. *McKenzie*, 269 N. Y. 369, 373; and, see *Loomis* v. *Loomis*, 288 N. Y. 222, 224–225.) In *Hessian Hills Country Club* v. *Home Ins. Co.* (262 N. Y. 189, 201) the court denied the claim that a prior adjudication was conclusive by pointing out that the earlier action was based upon a different policy. (See, also, *Glaser* v. *Huette*, 256 N. Y. 686; *Smith* v. *Kirkpatrick*, 305 N. Y. 66, 70 *et seq.*; *Jewtraw* v. *Hartford Acc. & Ind. Co.*, 2 N Y 2d 788.)

The divergency of opinion concerns itself with the rights and remedies available under the different policies. The prevailing members say that since plaintiff may not recover under the tort-feasor's policy, she may not recover under her own policy containing the MVAIC indorsement. They say that since assault by the assured was expressly provided not to be accidental and was expressly excluded under the tort-feasor's policy, it necessarily is not accidental and is excluded under the MVAIC indorsement despite absence thereunder of such language or such exclusion.

Reliance is placed by the majority upon the case of *Morgan* v. *Greater N. Y. Taxpayers Mut. Ins. Assn.* (305 N. Y. 243) for the proposition that an assault is not an accident within the meaning of a standard liability insurance policy. There the court pointed out at page 248 that if the carrier intended " to mean that there is no obligation to indemnify an assured for liability resulting from an assault committed by another assured, it should have made that intention known ". The court on that same page observed: " Clearly the reason for the exclusion from coverage of an assault committed by or at the direction of the assured is that it would not be in accord with public policy to indemnify a person for losses incurred as a consequence of his criminal acts. That, we think, and nothing more is the intent of that exclusory provision. The denial of coverage to an assured for liability imposed upon him for an assault in which he himself took no part finds no justification in the policy which lies behind the exclusory provision. To indemnify him does not save him from the consequences of his criminal act for he committed none."

In another case upon which the majority relies (*Messersmith* v. *American Fid. Co.*, 232 N. Y. 161, 165) the court stated: " Injuries are accidental or the opposite for the purpose of indemnity according to the quality of the results rather than the quality of the causes ". The same result was reached in

*Floralbell Amusement Corp.* v. *Standard Sur. & Cas. Co.* (256 App. Div. 221, 225). (See, also, *Huntington Cab Co.* v. *American Fid. & Cas. Co.,* 155 F. 2d 117, 119; *Jernigan* v. *Allstate Ins. Co.,* 269 F. 2d 353; *Johnson Corp.* v. *Indemnity Ins. Co.,* 7 N Y 2d 222, 228 *et seq*; *Smith* v. *Continental Cas. Co.,* 259 App. Div. 357; *Albrecht Co.* v. *Fidelity & Cas. Co.,* 289 Ill. App. 508; *Georgia Cas. Co.* v. *Alden Mills,* 156 Miss. 853.) The other cases cited in the prevailing opinion on the subject relate to the situation where the plaintiff sues the tort-feasor under a policy expressly excluding from coverage assault by the assured.

We must not lose sight of the subject matter of the action before us. Here the plaintiff seeks to recover under the MVAIC indorsement on the policy she owns for which she paid a consideration. The policy indorsement although not as broad as the statutory declaration of purpose does not specifically exclude under the term "uninsured automobile" an accident involving assault or a policy in which a successful disclaimer has been invoked. If such provision were required by statute, it necessarily would be read into the policy. In any event there "is the equally well-settled maxim that, where there is ambiguity in the terms of a contract prepared by one of the parties, 'it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against' such party." (*Rentways, Inc.* v. *O'Neill Milk & Cream Co.,* 308 N. Y. 342, 348.)

We come then to a consideration of the construction to be given article 17-A of the Insurance Law. The prevailing members say in effect that the law must be given a strict interpretation and that since Branch had a policy of insurance at the time of the accident, even though the insurer successfully disclaimed, Branch was not operating an uninsured motor vehicle. I am not able to give so literal an interpretation to the applicable statutory provisions. Section 600 of article 17-A of the Insurance Law provides in part as follows: "(2) Declaration of purpose. The legislature finds and declares that the motor vehicle financial security act * * * fails to accomplish its full purpose of securing to innocent victims of motor vehicle accidents recompense for the injury and financial loss inflicted upon them, in that the act makes no provision for the payment of loss on account of injury to or death of persons who, through no fault of their own, were involved in motor vehicle accidents caused by * * * (6) insured motor vehicles where the insurer disclaims liability or denies coverage."

Many States have recognized the need to protect innocent victims from financial loss by reason of the acts of irresponsible operators of motor vehicles. Recent legislation has been

enacted in several jurisdictions to remedy such situations and to fill the gaps which have existed. Despite differences in the various statutes a common thread runs through all of them — that the perspective from which the problem must be considered is the interests of the victim and not the actor. Thus in *Hartford Acc. & Ind. Co.* v. *Wolbarst* (95 N. H. 40, 43) where the collision was deliberately or intentionally caused, the court stated as follows: " The purpose of the New Hampshire Financial Responsibility Act was fundamentally to provide compensation for innocent persons who might be injured through faulty operation of motor vehicles. *Opinion of the Justices,* 81 N. H. 566. ' Financial responsibility statutes have been passed in many states, and are in the process of preparation in still others, to secure the solvency of operators upon the highways of those states, and to guarantee their ability to discharge judgments arising out of accidents in which they might be involved * * *. The beneficiaries of such an act and of such a policy, when issued, are the members of the general public who may be injured in automobile accidents by such person; and the policies are generally construed with great liberality to accomplish their purpose.' 7 Appleman, Insurance Law and Practice, 62, 63. This purpose of the statute is best served by construing the phrase ' accidentally sustained ' to include any unfortunate occurrence causing injury or damage. Regardless of the mental state of the insured that precedes the injury or the damage suffered by the traveler, the suffering or the loss is the same. Neither injury nor damage is mitigated by the fact that there was intent at any stage of the occurrence." (See, also, *Wheeler* v. *O'Connell,* 297 Mass. 549; *O'Roak* v. *Lloyds Cas. Co.,* 285 Mass. 532, 536; and generally on the subject Ann. 33 A. L. R. 2d 1027.)

The complicated society in which we live, and the ingenuity of the insurance companies, have made it possible to purchase immunity from many catastrophic contingencies unknown but a generation ago. The protection of the law in this area has grown with the exigencies of the times. A completely new concept of the reasons for and the purposes of liability insurance has emerged. In volume 48 of the Columbia Law Review (pp. 799, 800) this growth and expansion is ably commented upon in the following note: " However, ' liability insurance is coming to be regarded more and more as a device for providing funds to meet the needs of injured persons and less and less as a device for the protection of the insured.' Statutory recognition of this trend is manifested in financial responsibility laws, the purpose of which is to indemnify innocent third persons and to protect the general public from financially irresponsible

motorists. Automobile liability insurance contracts purporting to conform with such laws are read to include their provisions, which supersede any conflicting terms in the insurance contract. Since the basic purpose of the financial responsibility laws is not to afford financial protection to the insured, but rather to compensate his innocent victim, there is no reason why the victim's rights should depend upon the motivation of the insured's conduct. Nor are the victim's rights against the insurer derived through the insured. Since by statute they become absolute on the occurrence of an accident and cannot be changed by subsequent action of the insurer or the insured, they are statutorily independent rather than derivative.'' That this thought has been expressed as the public policy of other jurisdictions is demonstrated in *Wheeler* v. *O'Connell* (*supra*) and other similar decisions.

When Governor Harriman requested the enactment of the statute we are here construing, he made it clear in his message that the existing law " still fell short of protecting all of the innocent victims of motor vehicles " (printed in the foreword to " This Is Motor Vehicle Accident Indemnification Corporation ", N. Y. Insurance Dept., p. 2 [1958]). The express directive was to compensate all innocent victims of motor vehicles. We are not left in any doubt as to the legislative intent as it concerns our problem for section 600 of the Insurance Law specifically provides for coverage of insured motor vehicles where the insurer disclaims liability or denies coverage. This is further confirmed by the legislative expression of intent in the 1958 New York State Legislative Annual in the statement at pages 244, 245.

It is argued that section 600 was not intended to indemnify a tort-feasor for his willful misconduct. A simple answer is that we are not concerned here with the actor, the law provides many penalties for him, but rather with the innocent victims of hit-and-run drivers, stolen car operators and, I submit, persons who use automobiles as an instrument for assault. This is particularly true when we keep in mind that the victim entered into a contract (her MVAIC indorsement) to cover her for just such an eventuality. Ours is a problem of construction of the statute. As the court observed in *Matter of Capone* v. *Weaver* (6 N Y 2d 307, 309) : '' While it is true that, whenever the language of a statute is clear and unambiguous, we are required under ordinary rules of construction to give effect to its plain meaning (*Meltzer* v. *Koenigsberg,* 302 N. Y. 523; *Lawrence Constr. Corp.* v. *State of New York,* 293 N. Y. 634), this is not to say that literal meanings of words are to be adhered to or suffered to defeat the general purpose and mani-

fest policy intended to be promoted (*Matter of New York Post Corp.* v. *Leibowitz,* 2 N Y 2d 677; *People* v. *Ryan,* 274 N. Y. 149; *Matter of River Brand Rice Mills* v. *Latrobe Brewing Co.,* 305 N. Y. 36)."

This principle was succinctly enunciated in *Matter of New York Post Corp.* v. *Leibowitz* (2 N Y 2d 677, *supra*) in this statement at page 685: "In construing statutory provisions, the spirit and purpose of the statute and the objectives sought to be accomplished by the legislature must be borne in mind. 'The legislative intent is the great and controlling principle. Literal meanings of words are not to be adhered to or suffered to "defeat the general purpose and manifest policy intended to be promoted".'"

"It is a familiar legal maxim that 'he who considers merely by the letter of an instrument goes but skin deep into its meaning', and all statutes are to be construed according to their meaning, not according to the letter." (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 111, pp. 176–177.) This doctrine was early expressed in *Holmes* v. *Carley* (31 N. Y. 289, 290) as follows: "The same idea of the rule of constructing a statute, is very quaintly expressed by Plowden, in his commentary upon the case of *Eyston* v. *Studd* (2 Plowd., 465). He says, 'it is not the words of the law, but the internal sense of it that makes the law, and our law (like all others) consists of two parts, viz., of body and soul; the letter of the law is the body of the law, and the sense and reason of the law is the soul of the law, "*quia ratio legis est anima legis.*" And the law may be resembled to a nut, which has a shell and a kernel within, the letter of the law represents the shell, and the sense of it the kernel: and as you will be no better for the nut if you make use only of the shell, so you will receive no benefit from the law if you rely upon the letter, and as the fruit and profit of the nut lies in the kernel, and not in the shell, so the fruit and profit of the law consists in the sense more than in the letter.'"

The purpose of the statute clearly and unequivocally expressed is to protect the injured motorist and in construing the statute the evils to be remedied may not be disregarded. (*Surace* v. *Danna,* 248 N. Y. 18, 21; *Smith* v. *The People,* 47 N. Y. 330, 341, 342; *Matter of Meyer,* 209 N. Y. 386, 389; *Spencer* v. *Myers,* 150 N. Y. 269, 275; *People ex rel. Wood* v. *Lacombe,* 99 N. Y. 43; *Matter of Folsom,* 56 N. Y. 60, 66.)

Accordingly, I believe it was the clear intent of the Legislature to provide relief to innocent victims of just such situations as here presented and, therefore, the order granting plaintiff summary judgment should be affirmed.

50

WILLIAMS, P. J., McCLUSKY and HENRY, JJ., concur with HALPERN, J.; GOLDMAN, J., dissents and votes to affirm in opinion.

Order reversed, without costs of this appeal to either party, and plaintiff's motion for summary judgment denied, without costs, and defendant's motion for summary judgment granted, without costs and judgment entered adjudging that the defendant is not liable for plaintiff's claim.