[947 NE2d 124, 922 NYS2d 233]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent-Appellant, v JOHN ROBERT LANGAN, as Administrator of the Estate of NEIL CONRAD SPICEHANDLER, Deceased, Appellant-Respondent.

Argued February 8, 2011; decided March 29, 2011

**POINTS OF COUNSEL**

*Saiber, LLC*, New York City (*Jennine DiSomma* of counsel), for appellant-respondent. I. Appellant is entitled to coverage and benefits under the subject insurance policy as Mr. Spicehandler's injuries were "caused by an accident." (*Roche v United States Fid. & Guar. Co.*, 273 NY 473; *Matter of Daniel*

*[Motor Veh. Acc. Indem. Corp.]*, 181 Misc 2d 941; *De Forte v Allstate Ins. Co.*, 81 AD2d 465; *Michaels v City of Buffalo*, 85 NY2d 754; *Arthur A. Johnson Corp. v Indemnity Ins. Co. of N. Am.*, 7 NY2d 222; *Miller v Continental Ins. Co.*, 40 NY2d 675; *Agoado Realty Corp. v United Intl. Ins. Co.*, 95 NY2d 141; *Siagha v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 306 AD2d 60; *ACE Fire Underwriters Ins. Co. v Orange-Ulster Bd. of Coop. Educ. Servs.*, 8 AD3d 593.) II. Public policy dictates that the term "accident" within the subject insurance policy be determined from the perspective of the insured and that Mr. Spicehandler's injuries were therefore caused by an "accident" within the meaning of the subject policy. (*McCarthy v Motor Veh. Acc. Indem. Corp.*, 12 NY2d 922; *Milwaukee Mut. Ins. Co. v Butler*, 615 F Supp 491.) III. Ronald Popadich's guilty plea and subsequent criminal conviction are not determinative of the issue of appellant's entitlement to coverage under his insurance policy. (*Westchester Med. Ctr. v Travelers Prop. Cas. Ins. Co.*, 309 AD2d 927; *Matter of Allstate Ins. Co. v Massre*, 14 AD3d 610; *Matter of Willer v New York State Bd. of Regents*, 101 AD2d 937; *Capital Tel. Co. v Pattersonville Tel. Co.*, 56 NY2d 11; *D'Arata v New York Cent. Mut. Fire Ins. Co.*, 76 NY2d 659; *Jeffreys v Griffin*, 301 AD2d 232; *New York Cent. Mut. Fire Ins. Co. v Wood*, 36 AD3d 1048; *People v Slaughter*, 189 AD2d 157.) IV. Appellant is entitled to attorneys' fees because an insured is allowed to recover attorneys' fees if he successfully defends his insurance company's action to disclaim coverage. (*Mighty Midgets v Centennial Ins. Co.*, 47 NY2d 12.)

*Rivkin Radler LLP*, Uniondale (*Evan H. Krinick, Cheryl F. Korman* and *Harris J. Zakarin* of counsel), for respondent-appellant. I. John Robert Langan was not entitled to uninsured motorist benefits where Neil Conrad Spicehandler was the victim of a criminal assault and coverage for these benefits is only available for injuries sustained in an accident. (*Matter of Metropolitan Prop. & Cas. Ins. Co. v Mancuso*, 93 NY2d 487; *Buckner v Motor Veh. Acc. Indem. Corp.*, 66 NY2d 211; *City of Albany v Standard Acc. Ins. Co.*, 7 NY2d 422; *Morgan v Greater N.Y. Taxpayers Mut. Ins. Assn.*, 305 NY 243; *McGroarty v Great Am. Ins. Co.*, 36 NY2d 358; *Messersmith v American Fid. Co.*, 232 NY 161; *Miller v Continental Ins. Co.*, 40 NY2d 675; *Michaels v City of Buffalo*, 85 NY2d 754; *Beach Haven Apts., No. 6 v Allcity Ins. Co.*, 182 AD2d 658, 80 NY2d 761; *Olin v Moore*, 178 AD2d 517.) II. The Appellate Division erroneously concluded that State Farm Mutual Automobile Insurance Company was obligated to provide benefits pursuant to the

policy's mandatory personal injury protection endorsement and its death, dismemberment and loss of sight provisions. (*McCarthy v Motor Veh. Acc. Indem. Corp.*, 16 AD2d 35, 12 NY2d 922; *Matter of Knickerbocker Ins. Co. [Faison]*, 22 NY2d 554; *Utica Mut. Ins. Co. v Timms*, 293 AD2d 669; *Eveready Ins. Co. v Asante*, 153 AD2d 874; *Matter of Michigan Millers Mut. Ins. Co. v Cullington*, 59 AD2d 784; *Nallan v Union Labor Life Ins. Co.*, 42 NY2d 884; *Aetna Life & Cas. Co. v Nelson*, 67 NY2d 169; *Raffellini v State Farm Mut. Auto. Ins. Co.*, 9 NY3d 196; *Oberly v Bangs Ambulance*, 96 NY2d 295; *Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854.) III. John Robert Langan's remaining miscellaneous arguments are without merit. (*Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P.*, 7 NY3d 96; *Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175; *Matter of Walls v Levin*, 150 AD2d 873; *Matter of E.F.S. Ventures Corp. v Foster*, 71 NY2d 359; *Triple Cities Constr. Co. v Maryland Cas. Co.*, 4 NY2d 443; *Metropolitan Life Ins. Co. v Childs Co.*, 230 NY 285; *Lynn v Lynn*, 302 NY 193; *City of New York v Welsbach Elec. Corp.*, 9 NY3d 124; *Liss v Trans Auto Sys.*, 68 NY2d 15; *Matter of Balcerak v County of Nassau*, 94 NY2d 253.)

**OPINION OF THE COURT**

Chief Judge LIPPMAN.

At issue in this appeal is whether the insured decedent, the victim of an intentional crime, was injured as the result of an accident within the meaning of the uninsured motorist endorsement and certain other provisions of the insured's policy. Since the occurrence must be viewed from the insured's perspective, we conclude that it was indeed an accident and that the insured is entitled to benefits under the policy provisions at issue.

Decedent, Neil Conrad Spicehandler, was struck by a vehicle at 7th Avenue and 32nd Street in Manhattan on February 12, 2002. He sustained a compound fracture of his left lower leg, requiring surgery, and died from complications shortly after the operation. Decedent was one of many who were injured when the driver, Ronald Popadich, intentionally drove his vehicle into pedestrians. Popadich later pleaded guilty to second degree murder and admitted that he intended to cause Spicehandler's death.

Decedent was an insured under an automobile liability policy purchased by defendant Langan through plaintiff State Farm. As the administrator of decedent's estate, Langan made a claim

seeking to recover benefits under the policy's uninsured/ underinsured motorist (UM) endorsement, mandatory personal injury protection endorsement (PIP endorsement) and death, dismemberment and loss of sight endorsement (Coverage S).* The policy's UM endorsement provides that it

> "will pay all sums that the insured or the insured's legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured, caused by an accident arising out of such uninsured motor vehicle's ownership, maintenance or use"

subject to relevant policy exclusions. The PIP endorsement and Coverage S likewise state that they will pay benefits for injuries sustained as the result of "an accident." These endorsements exclude coverage on several bases, but none specifically excludes coverage for an injury that results from intentional conduct. State Farm denied and disclaimed liability because it determined, as relevant here, that decedent's death was caused not by an accident, but by the intentional conduct of the operator of the vehicle.

State Farm commenced this declaratory judgment action seeking a declaration that it was not obligated to provide benefits in connection with decedent's death. Defendant answered and counterclaimed, requesting a declaration that State Farm was required to provide coverage under the policy. Plaintiff's motion and defendant's cross motion for summary judgment were denied because the parties had not, at that point, provided the court with information regarding the outcome of the criminal action against Popadich, which the court deemed "essential" to determining whether decedent's injuries were caused by an intentional act (2004 NY Slip Op 30243[U]). The Appellate Division upheld the portion of the Supreme Court order that denied summary judgment on the issue of whether the incident was covered by the policy, finding that there was insufficient proof to determine whether decedent had been the victim of an intentional crime, but that, if he had, the incident would not be covered (18 AD3d 860, 862 [2d Dept 2005]).

After Popadich was convicted of second degree murder, State Farm renewed its motion for summary judgment, again seeking

---

* This action solely concerns claims made under Langan's own policy—not the policy of either the driver or the vehicle.

a declaration that it was not required to provide benefits under the policy. Langan opposed the motion and cross-moved for summary judgment, urging that whether the incident was an accident within the meaning of the policy must be determined from the perspective of the insured. Supreme Court granted State Farm's motion and denied Langan's cross motion on the basis of Popadich's conviction (2006 NY Slip Op 30400[U]).

On appeal, a majority of the Appellate Division modified to declare that State Farm was required to provide benefits under the mandatory PIP and Coverage S endorsements and, as so modified, affirmed (55 AD3d 281 [2d Dept 2008]). The Court determined that State Farm was not required to provide UM benefits because the purpose of statutorily required uninsured motorist coverage is to provide an individual with the same level of coverage he or she would be entitled to if injured in an accident with an insured motorist covered by an applicable policy. Since a standard liability policy would not have covered Popadich for his intentional criminal conduct, the Court found that Langan's UM coverage was not applicable under the circumstances presented here. However, the Court determined that in other contexts it was appropriate to determine whether a particular event was an accident from the insured's point of view, that the incident was clearly unexpected from decedent's perspective and that, as a result, State Farm was required to provide coverage under the PIP and Coverage S endorsements.

Two Justices dissented in part and would have affirmed Supreme Court's order declaring that State Farm was not required to provide coverage. The dissent agreed that Langan was not entitled to UM benefits under current law based on Popadich's intentional conduct, but observed that there had been a recent national trend to allow for coverage in similar circumstances and that strong public policy considerations weighed in favor of coverage. The dissent would have denied PIP and Coverage S benefits based on the law of the case and, in any event, disagreed that the same term should be interpreted differently within the same policy. Both parties appeal pursuant to leave granted by the Appellate Division, which certified for our review the question of whether its order was properly made. We modify and answer the certified question in the negative.

This appeal turns on whether decedent's injuries were caused by an accident within the meaning of the policy. Although the endorsements at issue do not define the term "accident," we have previously held that it is not to be "given a narrow,

technical definition," but should be interpreted according to how it would be understood by the average person (*Miller v Continental Ins. Co.*, 40 NY2d 675, 676 [1976]). We have determined that, for purposes of automobile insurance policies, the term "accident" means an event typically involving violence or the application of external force (*see Michaels v City of Buffalo*, 85 NY2d 754, 758 [1995]). In order to determine whether a particular event was " 'accidental, it is customary to look at the casualty from the point of view of the insured, to see whether or not . . . it was unexpected, unusual and unforeseen' " (*Miller*, 40 NY2d at 677 [citation omitted]). Although we have noted that the perspective of the injured victim should not be used to determine whether an accident has occurred, " '[b]ecause an injury is always fortuitous to a non-consenting victim' " (*Michaels*, 85 NY2d at 759 [citation omitted]), here we have the situation where the victim is also the insured.

It is clear that, viewed from the insured's perspective, the occurrence was an unexpected or unintended event—and therefore an "accident"—even though Popadich admittedly intended to strike decedent with the vehicle. The language of the policy also suggests that this type of situation would be covered as it was an accident caused by the use of a motor vehicle that did not have an applicable insurance policy. Significantly, Insurance Department regulations require that an automobile owner's liability insurance policy contain a provision specifying "that assault and battery shall be deemed an accident unless committed by or at the direction of the insured" (11 NYCRR 60-1.1 [f]). Although the provisions at issue here do not involve liability coverage, the regulation is relevant to the understanding of the extent of coverage provided by the endorsements.

The argument against requiring coverage, advanced by State Farm and relied upon by the Appellate Division, is based on the general principle that mandatory uninsured motorist benefits are meant to provide coverage that is coextensive with, and not greater than, that afforded by a standard liability policy. They rely on our statement that the purpose of mandatory UM benefits is " 'to provide the insured with the same level of protection he or she would provide to others were the insured a tortfeasor in a bodily injury accident' " (*Raffellini v State Farm Mut. Auto. Ins. Co.*, 9 NY3d 196, 204 [2007], quoting *Matter of Prudential Prop. & Cas. Co. v Szeli*, 83 NY2d 681, 687 [1994]).

In support of its position, State Farm relies on *McCarthy v Motor Veh. Acc. Indem. Corp.* (16 AD2d 35 [4th Dept 1962], *affd*

12 NY2d 922 [1963]), a case where the plaintiff victim was injured when the insured motorist committed an intentional assault against her using his vehicle. After the insurer denied coverage because the occurrence was not an accident within the meaning of the policy, plaintiff sought to recover under the policy's MVAIC endorsement—a statutorily required endorsement intended to afford coverage to a person injured by an uninsured or unidentified motorist, equal to that available to one injured by a motorist covered by an applicable liability policy (*see McCarthy*, 16 AD2d at 38). MVAIC is funded by assessments levied against all of the insurance companies licensed to conduct business in the state (*see McCarthy*, 16 AD2d at 39). *McCarthy* held that since an intentional assault committed by an insured motorist was not an accident subject to coverage under the standard liability policy, such an occurrence would likewise be excluded from coverage under the MVAIC endorsement (*see* 16 AD2d at 43). The Court also determined that allowing recovery under MVAIC would be inconsistent with the purpose for which the special fund had been established (*see McCarthy*, 16 AD2d at 44).

This case differs from *McCarthy* in two important respects. First, UM coverage, although required by statute, is part of the insured's own policy—a policy that the insured selected and for which he pays premiums. Benefits received through coverage under the UM endorsement do not come out of a state fund. Second, the insured is the victim in this case, not the tortfeasor, and the public policy against providing coverage for an insured's criminal acts is not implicated.

We hold that, consistent with the reasonable expectation of the insured under the policy and the stated purpose of the UM endorsement (to provide coverage against damage caused by uninsured motorists), the intentional assault of an innocent insured is an accident within the meaning of his or her own policy. The occurrence at issue was clearly an accident from the insured's point of view and Langan is entitled to benefits under the UM endorsement.

This result is also in keeping with the national trend toward allowing innocent insureds to recover uninsured motorist benefits under their own policies when they have been injured through the intentional conduct of another (*see e.g. American Family Mut. Ins. Co. v Petersen*, 679 NW2d 571 [Iowa 2004]; *Shaw v City of Jersey City*, 174 NJ 567, 811 A2d 404 [2002]; *Wendell v State Farm Mut. Auto. Ins. Co.*, 293 Mont 140, 974

P2d 623 [1999]). Although the above decisions are not binding on this Court, we are persuaded that the view that has been adopted by these jurisdictions is the better one.

For many of the same reasons, Langan is entitled to coverage under the PIP endorsement and Coverage S. The average insured's understanding of the term "accident" is unlikely to vary from endorsement to endorsement within the same policy. The occurrence, from the insured's perspective, was certainly unexpected and unforeseen and should be considered an accident subject to coverage. Contrary to State Farm's argument, we perceive no danger that this result will frustrate efforts to fight fraud in the no-fault insurance system. Significantly, there is no allegation whatsoever of fraud in this case and it is patent that benefits should continue to be denied to those who intentionally cause their own injuries.

The argument that Langan is entitled to attorneys' fees was not addressed by the courts below and should be remitted to Supreme Court for its determination in the first instance.

Accordingly, the order of the Appellate Division should be modified, without costs, by granting defendant judgment declaring in accordance with this opinion and remitting to Supreme Court for further proceedings in accordance with this opinion, and, as so modified, affirmed. The certified question should be answered in the negative.

SMITH, J. (dissenting). I would affirm the order of the Appellate Division.

As a general matter, it is true that whether a particular event is an "accident" should be viewed from the point of view of the insured. The insured here was Spicehandler, the event was an accident from his point of view, and his estate was therefore properly allowed to recover under the so-called PIP and Coverage S endorsements.

But uninsured/underinsured motorists (UM) coverage is different. Its purpose is to protect an insured who is injured by a tortfeasor without liability insurance—a purpose accomplished by putting the insured in the position that he would have been in if the tortfeasor had been insured. This requires a determination of whether the tortfeasor could have made a claim under a hypothetical policy of liability insurance—and the tortfeasor should thus be treated as the "insured" for purposes of analysis. Since Popadich drove his car into Spicehandler on purpose, the event was not an accident from Popadich's point of view;

Popadich could not have obtained indemnification from a liability insurer; and Spicehandler's estate should not be permitted to recover under the UM endorsement.

This is essentially what we held when we affirmed the Appellate Division's decision in *McCarthy v Motor Veh. Acc. Indem. Corp.* (16 AD2d 35 [4th Dept 1962], *affd* 12 NY2d 922 [1963]). The majority tries to distinguish *McCarthy* on what it calls two grounds, which seem really to be one—that UM coverage is "part of the insured's own policy" and that "the insured is the victim in this case, not the tortfeasor" (majority op at 356). The distinction will not withstand analysis. The purpose of UM coverage is the same as the purpose of the MVAIC endorsement at issue in *McCarthy*: "to afford coverage," as the majority puts it, "to a person injured by an uninsured or unidentified motorist, equal to that available to one injured by a motorist covered by an applicable liability policy" (majority op at 356). The essential rationale for *McCarthy* is that the victim of an uninsured motorist should not be in a *better* position than the victim of an insured one. That rationale was sound in *McCarthy*, and is sound here.

I see no justification for departing from *McCarthy*. A more serious argument might be made—though it is not made here— for a more significant change in the law: modifying, in cases involving automobile liability policies required by statute, the general rule that liability insurance cannot cover intentional torts. As *McCarthy* mentions, a standard automobile liability policy provides coverage only for accidents, and thus would not cover "an assault and battery committed by the insured" (16 AD2d at 41; *see also e.g. Matter of Travelers Indem. Co. v Richards-Campbell*, 73 AD3d 1076 [2d Dept 2010]; *Matter of Aetna Cas. & Sur. Co. v Perry*, 220 AD2d 497 [2d Dept 1995]). This limitation seems to be derived from the long-established rule, based on public policy, that insurance may not indemnify a tortfeasor for intentional wrongdoing (*Messersmith v American Fid. Co.*, 232 NY 161, 165 [1921]; *Town of Massena v Healthcare Underwriters Mut. Ins. Co.*, 98 NY2d 435, 445 [2002]). Courts in some jurisdictions have made compulsory liability insurance an exception to this rule, reasoning that the purpose of liability insurance, to the extent that it is required by law, is to protect injured victims, not tortfeasors, and that victims should be protected no less against intentional than against negligent torts (*e.g. Speros v Fricke*, 98 P3d 28, 36-38 [Utah 2004]; *Dotts v Taressa J.A.*, 182 W Va 586, 390 SE2d 568 [1990]; *Wheeler v*

*O'Connell*, 297 Mass 549, 9 NE2d 544 [1937]). Whether such an exception is justified, and if so whether it should be created by judges or by legislators, are questions that we should not address until we have a case that presents them.

Judges CIPARICK, GRAFFEO, PIGOTT and JONES concur with Chief Judge LIPPMAN; Judge SMITH dissents and votes to affirm in a separate opinion in which Judge READ concurs.

Order modified, etc.