MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2017 ME 186
Docket:        Cum-16-305
Argued:        May 9, 2017
Decided:       August 29, 2017
Revised:       November 30, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

THERESA L. ALLOCCA et al.

v.

YORK INSURANCE COMPANY OF MAINE et al.

HJELM, J.

[¶1]  In January 2014, Timothy Austin Davison, who was known as Asti, was fatally shot while operating a vehicle that an assailant, operating another vehicle, had forced onto a median on an interstate highway.  Asti's parents, Theresa L. Allocca and Timothy Allen Davison, filed this action in their individual capacities, and Davison also filed as personal representative of the Estate of Timothy Austin Davison,[1] seeking to recover uninsured motorist (UM) benefits based on several automobile insurance policies issued by defendants York Insurance Company of Maine, Allstate Insurance Company, and Horace Mann Teachers Insurance Company.   The Superior Court

---

[1]  Except where indicated otherwise, we refer to the plaintiffs collectively as "Davison" because Timothy Allen Davison is the party, either individually or in his representative capacity, who seeks recovery in most of the claims in the complaint.

(Cumberland County, *Warren, J.*) granted a summary judgment in favor of the insurers, concluding that neither any of the policies nor Maine's UM statute, 24-A M.R.S. § 2902 (2016), provides UM coverage for the loss associated with Asti's death. On this appeal by Davison, we affirm.

## I. BACKGROUND

[¶2] The following facts are undisputed. *See Cote Corp. v. Kelley Earthworks, Inc.*, 2014 ME 93, ¶ 8, 97 A.3d 127. On January 4, 2014, Asti was driving to Maine in his father's sport utility vehicle. While on Interstate 81 in Maryland, an assailant[2] driving a pick-up truck began pursuing Asti and fired shots at Asti's vehicle. The two vehicles crossed the state line into Pennsylvania, and the assailant rammed his truck into the SUV, pushing the SUV off the road onto the median. The assailant then reversed direction and approached Asti from the southbound side of the highway. The assailant pulled up next to Asti's SUV in the median, and, from his truck, fired multiple shots at Asti and drove away. Asti died of the gunshot wounds.

---

[2] In its statement of material facts, *see* M.R. Civ. P. 56(h), Allstate made a factual assertion that included the name of a person charged with murdering Asti. Davison's opposing statement of material facts objected to that assertion on evidentiary grounds, and the court correctly concluded that the assertion had not been properly established. *See* M.R. Civ. P. 56(e). Further, as the court observed in its order, the identification of the assailant could be material to the claims in this case because Davison seeks UM benefits based on the characterization of the criminal incident as a hit-and-run. None of the parties argued in the trial court or here, however, that the existence of coverage turns on that factual issue, and so we do not address it.

3

[¶3]   Four insurance policies issued by the defendants are relevant to this case.

[¶4]   First, Asti was the named insured on an automobile policy and a motorcycle policy issued by Allstate.  Each policy insured a vehicle that had been owned by Asti and provided the following UM coverage:

> We will pay damages for bodily injury which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle.  Injury must be *caused by accident* and arise out of the ownership, maintenance or use of an uninsured motor vehicle.

(Emphasis added.)

[¶5]   Next, Asti's father was the named insured on a York Insurance automobile policy covering the SUV that Asti was driving at the time he was killed.  The definition of an "insured" in the York policy includes any "family member" and "[a]ny other person 'occupying' 'your covered auto,'" thereby rendering both Asti and his father insureds within the meaning of the policy. The York policy included the following statement of UM coverage:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":
>
> 1. Sustained by an "insured"; and
> 2. *Caused by an accident*.

> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle[.]"

(Emphasis added.)

[¶6]  Finally, Asti's mother was the named insured on a Horace Mann policy covering her vehicle.  That policy included the following statement of UM coverage:

> We will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle.  The bodily injury must be *caused by accident* arising out of the operation or ownership of the uninsured motor vehicle.

(Emphasis added.)

[¶7]  In August 2015, Timothy and Theresa individually, and Timothy as the personal representative of Asti's estate, filed a complaint against Allstate, York, and Horace Mann.  The Estate sought payment of UM benefits from Allstate and York.  Asti's parents alleged that they are entitled to recover in their own right as statutory beneficiaries under the wrongful death statute, 18-A M.R.S. § 2-804 (2016), based on the UM coverage of their York and Horace Mann policies, respectively.  All of these claims were based on an allegation that Asti's death was caused by a hit-and-run driver.

[¶8]  Each of the defendants moved for summary judgment, asserting that the losses arising from Asti's death are not covered by the UM provisions

5

in the policies because his death was not caused by an "accident" and did not arise out of the "use" of a vehicle within the meaning of the policies or the UM statute. Davison opposed the defendants' motions.

[¶9] In June 2016, the court entered an order granting each summary judgment motion based on its conclusion that UM coverage applies only to the "reasonable and proper use" of an uninsured or hit-and-run vehicle and that the way the assailant used the vehicle he was operating did not constitute a proper use. Adjudicating the issue on that ground, the court did not reach the question of whether Asti's death was "caused by an accident" pursuant to the uninsured motorist policies and the UM statute.

[¶10] Davison timely appealed.

II. DISCUSSION

[¶11] When the material facts are not in dispute, we review the grant of a motion for summary judgment de novo. *See Grant v. Foster Wheeler, LLC*, 2016 ME 85, ¶¶ 12-13, 140 A.3d 1242. On appeal, Davison argues that the court erred by entering a summary judgment in favor of the defendants because the terms of UM coverage in the policies themselves allow for recovery here, or, alternatively, if the loss caused by Asti's death is not

covered by the policies, the UM statute nonetheless entitles them to UM coverage. *See* 24-A M.R.S. § 2902(1).

[¶12] We first address whether Asti's death is a covered loss under the UM provisions of the policies. Because we conclude that it is not, we proceed to address whether such coverage exists as a requirement of section 2902(1). *See Tibbetts v. Me. Bonding & Cas. Co.*, 618 A.2d 731, 732 (Me. 1992) (stating that "when the terms of an insurance policy conflict with mandatory statutory provisions, the statutory provisions must prevail").

A.    Uninsured Motorist Coverage Pursuant to the Insurance Policies

[¶13] Each of the UM provisions in the policies at issue here requires that, to be covered, the loss must be caused by "an accident."[3] To determine the applicability of the UM provisions, we must therefore determine whether Asti's death was caused by an accident within the meaning of the policies. In construing the terms of an insurance contract, we "interpret unambiguous policy language consistent with its plain meaning and construe ambiguous policy language strictly against the insurance company and liberally in favor

---

[3] To qualify for UM coverage, the York policy requires that an injury be "caused by an accident," and in the Allstate and Horace Mann policies an injury must be "caused by accident." *See supra* ¶¶ 4-6. Notwithstanding Horace Mann's argument to the contrary, we see no material difference between the two phrases and therefore analyze them identically.

of the policyholder." *Langevin v. Allstate Ins. Co.*, 2013 ME 55, ¶ 9, 66 A.3d 585 (quotation marks omitted).

[¶14]  Applying these principles of construction to the policies, we conclude that Asti's murder was not an "accident" and therefore that the loss is not covered by the UM protection included in any of the policies issued by the defendants.

[¶15]  We recently concluded that the term "auto accident" in an automobile insurance policy, although undefined by the policy, is unambiguous and thus must be given its plain meaning. *Kelley v. N. E. Ins. Co.*, 2017 ME 166, ¶ 7, --- A.3d ---.  We stated that the commonly understood meaning of an "accident" is "an event that is without apparent cause or unexpected; an unfortunate event, especially one causing injury or damage." *Id*. (alterations omitted) (citing 1 Shorter Oxford English Dictionary 14 (6th ed. 2007)).  Based on this, we interpreted the term "auto accident" to mean "an unintended and unforeseen injurious occurrence involving an automobile."  *Id.*  Here, as in *Kelley*, the policies at issue do not define "accident," 2017 ME 166, ¶ 7, --- A.3d ---, and the summary judgment record establishes that Asti's death was not unintended but rather was the result of

the assailant's deliberate and purposeful conduct. The loss occasioned by his death is therefore not an accident that would invoke UM coverage.

[¶16] We recognize that some courts have adopted the view that the question of whether a loss results from an "accident" is answered from the perspective of the insured. *See Am. Family Mut. Ins. Co. v. Petersen*, 679 N.W.2d 571, 581-82 (Iowa 2004); *Wendell v. State Farm Mut. Auto. Ins. Co.*, 974 P.2d 623, 635 (Mont. 1999); *State Farm Mut. Ins. Co. v. Pitman*, 809 A.2d 1280, 1282-83 (N.H. 2002); *State Farm Mut. Auto. Ins. Co. v. Langan*, 947 N.E.2d 124, 127-29 (N.Y. 2011). Although the conduct of the person who killed Asti was indisputably deliberate and not accidental, there is no evidence in the record that it was foreseeable to Asti himself, and so, based on that approach, his death would be viewed as "accidental."

[¶17] We conclude, however, that describing an intentional act—such as an intentional killing—as an "accident" stretches the plain meaning of that word too far. Instead, we find more persuasive the contrary view, consistent with our holding in *Kelley*, 2017 ME 166, ¶ 7, --- A.3d ---, that the plain and commonly understood meaning of an "accident" is an unexpected event. That the insured himself may have been unsuspecting does not transform the intentional act—something as heinous as the murder of Asti—into an

accident. Other jurisdictions have held, and we agree, that "an injury resulting from a willful act was no accident because the harm had been intended." *Landry v. Dairyland Ins. Co.*, 701 A.2d 1035, 1036 (Vt. 1997); *see also Austin v. State Farm Mut. Auto. Ins. Co.*, 625 N.W.2d 213, 217 (Neb. 2001) (holding that, in an uninsured motorist coverage provision of an automobile liability policy, "the word 'accident' does not cover intentional torts"); *Roller v. Stonewall Ins. Co.*, 801 P.2d 207, 210 (Wash. 1990) (explaining that "an intentional act can never be an accident" because a "loss is accidental when it happens without design, intent, or obvious motivation" (quotation marks omitted)), *partially overruled on other grounds by Butzberger v. Foster*, 89 P.3d 689, 693-96 (Wash. 2004).

[¶18]   For this reason, without addressing the court's conclusion that the UM coverage in the policies was not applicable because the loss did not arise from the "use" of a motor vehicle, we conclude as a matter of law that Asti's death was not caused by an "accident."  The condition of coverage that the loss must be the product of an accident is therefore not satisfied here, and UM coverage is not available to Davison pursuant to the terms of any of the policies issued by the defendants.

B.      Uninsured Motorist Coverage as Required by Statute

[¶19]  We next consider Davison's alternative argument that if—as we have concluded—the terms of the UM protection provisions in the insurance contracts do not provide coverage for the loss, that coverage still exists by statutory prescription.

[¶20]   The statute at issue is 24-A M.R.S. § 2902(1), which states, in relevant part:

> A policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may not be delivered or issued for delivery in this State with respect to any such vehicle registered or principally garaged in this State, unless coverage is provided in the policy or supplemental to the policy for the protection of persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured, underinsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, sustained by an insured person resulting from the ownership, maintenance or use of such uninsured, underinsured or hit-and-run motor vehicle.

[¶21]   Davison asserts that section 2902(1) requires UM coverage to provide indemnification that the insured is "legally entitled" to recover from the operator of a hit-and-run vehicle, even if the underlying loss is not "caused by an accident"—a limitation created by the policies at issue here.   The defendants, in contrast, argue that the purpose of the UM statute is to mirror

the scope of existing liability coverage, rather than to broaden the scope of covered losses.

[¶22]   This issue calls for us to construe section 2902(1).  "[T]he fundamental rule in statutory construction is that the legislative intent as divined from the statutory language controls the interpretation of the statute." *Tibbetts*, 618 A.2d at 733 (quotation marks omitted).

[¶23]   Although Davison contends that section 2902(1) requires UM coverage to extend to nonaccidental losses for which the uninsured or hit-and-run vehicle operator would be liable, we have stated that in enacting that statute, the Legislature intended to provide compensation to insureds when they sustain losses resulting from *accidents*.  *See Dickau v. Vt. Mut. Ins. Co.*, 2014 ME 158, ¶ 43, 107 A.3d 621; *Beal v. Allstate Ins. Co.*, 2010 ME 20, ¶ 34, 989 A.2d 733; *Wescott v. Allstate Ins.*, 397 A.2d 156, 167 (Me. 1979). Because Asti's death was not the result of an accident, section 2902(1) does not require the insurers to compensate Davison to any extent further than is provided in the UM provisions of the policies.

[¶24]  Additionally, "[w]e have consistently held that the [L]egislature's purpose in enacting section 2902 was to provide an injured insured the same recovery which would have been available had the tortfeasor been insured to

the same extent as the injured party." *Jipson v. Liberty Mut. Fire Ins. Co.*, 2008 ME 57, ¶ 8, 942 A.2d 1213 (alteration omitted) (quotation marks omitted); *see also Wallace v. State Farm Mut. Auto. Ins. Co.*, 2017 ME 141, ¶ 12, --- A.3d ---; *Farthing v. Allstate Ins. Co.*, 2010 ME 131, ¶ 6, 10 A.3d 667; *Molleur v. Dairyland Ins. Co.*, 2008 ME 46, ¶ 10, 942 A.2d 1197. In other words, UM coverage provides the insured with the same recovery that the policy's liability coverage would provide to a third person to whom the insured causes a compensable loss. *See Wallace*, 2017 ME 141, ¶ 12, --- A.3d ---. Thus, with exceptions not applicable here[4] and for purposes of this case, the liability and UM coverage created in an automobile insurance policy are symmetrical. Accordingly, we have "characterized UM insurance as gap coverage that fills the gap left by an underinsured tortfeasor." *Id.* (citing *Tibbetts v. Dairyland Ins. Co.*, 2010 ME 61, ¶¶ 17, 21, 999 A.2d 930). Although section 2902 requires automobile policies to include UM protection to fill gaps in the *amount* of the tortfeasor's liability insurance available to cover the UM insured's damages, it does not create a new and broader coverage, as Davison argues. *See Tibbetts*, 2010 ME 61, ¶ 17, 999 A.2d 930 ("In enacting the UM statute, the Legislature intended to permit the injured party to recover the

---

[4] For example, UM coverage provided by the policies relevant to this case does not extend to property damage, which is covered by liability protections.

13

*amount* he would have received had the tortfeasor been insured to the same extent as the injured party." (emphasis added) (quotation marks omitted)).

[¶25] None of the automobile policies relevant to this action would have provided liability coverage for a loss arising from the conduct at issue here. Each policy contains an exclusion from coverage for liability based on intentional acts.[5] We have held that an intentional act exclusion in a liability policy "applies only when the insured has acted with the intention or expectation that another will be harmed by the insured's intentional act," and that the exclusion applies, for example, where the insured defendant shot and killed three people and those "injuries . . . were intended." *Royal Ins. Co. v. Pinette*, 2000 ME 155, ¶¶ 8, 11, 756 A.2d 520; *see also State Mut. Ins. Co. v. Bragg*, 589 A.2d 35, 38 (Me. 1991).

[¶26] The parties do not dispute that the hit-and-run driver pursued Asti's SUV; fired shots at it; rammed the SUV off the road; and then circled back in his own vehicle and fatally shot Asti. Because the assailant's actions would not have been covered under the liability protections provided in the

---

[5] The York policy does not provide liability coverage "for any 'insured' who intentionally causes bodily injury or property damage." The Allstate policy excludes coverage for "bodily injury or property damage intended by, or reasonably expected to result from, the intentional or criminal acts of an insured person." The Horace Mann policy excludes coverage "for any bodily injury . . . caused intentionally by the insured." These intentional act exclusions are common, since "[t]he language of liability insurance policies is standardized throughout the insurance industry." *Mass. Bay Ins. Co. v. Ferraiolo Constr. Co.*, 584 A.2d 608, 609 (Me. 1990).

policies issued by York, Allstate, or Horace Mann, the loss arising from Asti's death is not covered by the UM provisions of those policies. Therefore, section 2902 does not require the defendants to provide UM coverage arising from Asti's death.

## III. CONCLUSION

[¶27] We therefore conclude that the UM provisions included in the policies issued by the defendants do not provide coverage for losses caused by Asti's death. Additionally, section 2902(1) does not mandate that the UM protections in those policies provide such coverage. The court therefore correctly granted a summary judgment for the insurers.[6]

The entry is:

Judgment affirmed.

---

[6] We need not and do not reach Horace Mann's separate arguments, unique to the claims brought by Allocca, that she is not entitled to UM coverage because Asti was not an insured on her policy and because UM recovery cannot arise based on her independent wrongful death claim.

Jeffrey T. Edwards, Esq. (orally), and Timothy D. Connolly, Esq., Preti Flaherty Beliveau & Pachios, LLP, Portland, for appellants Theresa L. Allocca and Timothy Allen Davison

John S. Whitman, Esq. (orally), Richardson, Whitman, Large & Badger, Portland, for appellee York Insurance Company of Maine

Martica S. Douglas, Esq. (orally), Douglas, Denham, Buccina & Ernst, Portland, for appellee Allstate Insurance Company

James D. Poliquin, Esq. (orally), and Jonathan W. Brogan, Esq., Norman, Hanson & DeTroy, LLC, Portland, for appellee Horace Mann Teachers Insurance Company

Cumberland County Superior Court docket number CV-2015-375
FOR CLERK REFERENCE ONLY