LODGE CORPORATION vs. ASSURANCE COMPANY OF AMERICA.

No. 98-P-1658.

Middlesex. October 11, 2001. - October 4, 2002.

Present: PERRETTA, KAPLAN, & BECK, JJ.

*Insurance,* Contractor's insurance, Construction of policy.

The term "building materials" in a builder's risk insurance policy was
   unambiguous and included cement, and therefore, where an insured failed
   to report in a timely manner, as required by the insured's policy, that
   construction on a particular building had begun when the building's founda-
   tion had been poured, the insurer properly denied the insured's subsequent
   claim arising from a fire that destroyed the building. [197-200]

CIVIL ACTION commenced in the Superior Court Department on
November 26, 1996.

The case was heard by *James F. McHugh, III,* J., on motions
for summary judgment.

*James S. Franchek* for the plaintiff.

*James S. Harrington* for the defendant.

PERRETTA, J. In March, 1994, Lodge Corporation (Lodge), a
building contractor, obtained a builder's risk insurance policy
from Assurance Company of America (Assurance).[1] The policy
provided retroactive coverage for a construction site commenced
in the previous month upon compliance with certain reporting
provisions and a monthly rate endorsement which provides that
the "starting date for the purpose of this report is the date when
you first put the building materials on the construction site."
Lodge poured the foundation for the building on October 24,
and received lumber at the site on or after November 2. On
December 4, an accidental fire destroyed the structure as it

---

[1]Builder's risk insurance typically indemnifies builders or contractors
against the loss of, or damage to, a building under construction. See 1 Couch,
Insurance § 1:53, at 1-77 (3d ed. 1998).

existed on that date. The day after the fire, Lodge sent Assurance a reporting form stating that construction at the site had begun in November. Assurance took the position that construction began in October, when the foundation was poured, and denied Lodge's claim. Lodge then brought an action for breach of contract and violations of G. L. c. 93A and G. L. c. 176D. On cross motions for summary judgment, a Superior Court judge concluded that cement was a "building material" and ordered entry of judgment in Assurance's favor.[2] We affirm.

1. *The controversy.* Lodge is a construction company that builds about fifty single-family houses a year. Its president, Andrew Lane, had been in the home construction business since 1958. Over the years, Lane had constructed or supervised the construction of some 13,000 houses. Since 1967 or 1968, he had purchased builder's risk insurance for his construction projects through one insurance agency. That agency periodically reviewed the cost of the policies for Lodge and, from time to time, recommended that he change insurers in order to obtain the best coverage at the lowest cost. It was upon the advice of the agency that Lodge, in early 1994, obtained a builder's risk policy from Assurance. This new policy took effect on March 2, 1994, and insured each of Lodge's structures under construction up to $1,000,000 against damage or fire loss. The provisions of the policy here controlling, sections E.4(a) & (b), provide in pertinent part:

> "a. By the last day of each month you will report to us the total estimated completed value of all buildings in your inventory during the previous month. Inventory includes buildings you started as well as previously reported buildings. . . .

> "The starting date for the purpose of this report is the date when you first put the *building materials* on the construction site (emphasis supplied).

> "b. If, at the time of a *loss* you have not reported a build-

---

[2]More specifically, the judge concluded: "Construed in its plain and ordinary sense, the term 'building materials' is unambiguous; it means material that becomes part of a building. Cement is such a material."

ing as required in this provision, we do not cover that building for that *loss*" (emphasis in original).

As can be seen from the terms of the policy, Lodge was required to report by the last day of each month the total estimated completed value of all structures started during the previous month. This reporting method gave Lodge a grace period during which it could add a new construction site and receive retroactive coverage so long as Lodge reported the site by the end of the *next* calendar month after the starting date of construction.[3] As provided by the policy, the "starting date" turns upon the date when "building materials" were first put upon the site. The policy, however, does not define the term "building materials."

It is Lodge's position that as used in section E.4(a), the term "building materials" is ambiguous and can reasonably be construed to mean lumber and other flammable components used to construct a building above the level of the lowest basement floor. The question before us is whether, as matter of law and as Assurance argues, the policy is unambiguous and enforceable in accordance with its terms, see *Seaco Ins. Co.* v. *Barbosa*, 435 Mass. 772, 779 (2002), and cases therein cited, or whether Lodge was entitled to summary judgment because, as explained in *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. 275, 281 (1997), quoting from *Trustees of Tufts Univ.* v. *Commercial Union Ins. Co.*, 415 Mass. 844, 849 (1993), "[w]here . . . there is more than one rational interpretation of policy language, 'the insured is entitled to the benefit of the one that is more favorable to it.' " See *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995); *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998).

2. *The resolution.* In construing the terms of a policy, we consider the common and technical understanding of the words as well as the conduct of the parties in light of all the circumstances. See Restatement (Second) of Contracts § 202 (1981).[4] "If there is no ambiguity, we 'construe the words of the policy in their usual and ordinary sense.' " *Citation Ins. Co.*

---

[3]Lodge's monthly premium was based upon a percentage of the completed construction in relation to the value of the building upon its completion.

[4]The section reads:

v. *Gomez*, 426 Mass. at 381, quoting from *Hakim* v. *Massachusetts Insurers' Insolvency Fund*, 424 Mass. at 280.

We look first to the common understanding of the term "building materials." As defined in Webster's Third New Intl. Dictionary 1392 (1993), the word "material," when used as a noun, means "the basic matter (as metal, wood, plastic, fiber) from which the whole or the greater part of something physical (as a machine, tool, *building*, fabric) is made" (emphasis supplied). See *Wellesley* v. *Brossi*, 340 Mass. 456, 457 (1960) (sand, rock, cement blocks, brick, and wood or "other building materials"); *DiMaggio* v. *Mystic Bldg. Wrecking Co.*, 340 Mass. 686, 689 (1960) (heavy lumber). Cf. *Mutual Lumber Co.* v. *Sheppard*, 173 S.W.2d 494, 497-498 (Tex. App. 1943) (hand-tools not within statutory comprehension of term "building materials").

Lodge does not argue that the term "building materials," standing alone, is *limited* to wooden framing materials.[5] Nor does it make any real argument that the term in question becomes ambiguous when read in the context of the entire

---

"(1) Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight.

"(2) A writing is interpreted as a whole, and all writings that are part of the same transaction are interpreted together.

"(3) Unless a different intention is manifested,

"(a) where language has a generally prevailing meaning, it is interpreted in accordance with that meaning;

"(b) technical terms and words of art are given their technical meaning when used in a transaction within their technical field.

"(4) Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement.

"(5) Wherever reasonable, the manifestations of intention of the parties to a promise or agreement are interpreted as consistent with each other and with any relevant course of performance, course of dealing, or usage of trade." Restatement (Second) of Contracts § 202 (1981).

[5]Indeed, both Lodge's president and controller acknowledged in their depositions that cement is a building material.

policy.[6] See *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. at 466-467 ("words, which are clear by themselves, may become ambiguous when read in the context of an insurance policy"). Instead, it argues that the circumstances of the execution of the insurance policy demonstrate the ambiguity. See Restatement (Second) of Contracts § 202 comment b (1981).[7]

There are two circumstances which Lodge argues we must consider. First, there is Assurance's brochure in which it is expressly noted and emphasized that *"[o]nce material which will be part of the completed structure is delivered to the construction site (including foundation), it is considered a start."* Lodge cites the brochure as proof of Assurance's recognition that the term "building materials," as used in the policy itself, reasonably could be construed to mean wooden framing materials only.[8] Second, there is an affidavit from Lodge's insurance adjuster in which he states that insurance programs provided under other builder's risks policies allowed policyholders to report building starts no later than the date that construction began above the level of the lowest basement floor.[9] We see

---

[6]Lodge's simple assertion that the Superior Court judge erred in "overlook-[ing] the fundamental rule that words that are clear and unambiguous, by themselves, may be ambiguous when read in the context of the entire insurance contract" does not rise to the level of appellate argument within the comprehension of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).

[7]The comment reads:

"The meaning of words and other symbols commonly depends on their context; the meaning of other conduct is even more dependent on the circumstances. In interpreting the words and conduct of the parties to a contract, a court seeks to put itself in the position they occupied at the time the contract was made. When the parties have adopted a writing as a final expression of their agreement, interpretation is directed to the meaning of that writing in the light of the circumstances. See [Restatement (Second) of Contracts] §§ 209, 212. The circumstances for this purpose include the entire situation, as it appeared to the parties, and in appropriate cases may include facts known to one party of which the other had reason to know. See [Restatement (Second) of Contracts] § 201." Restatement (Second) of Contracts § 202 comment b (1981).

[8]Whether Lodge received the brochure prior to the loss in question is an immaterial disputed fact.

[9]According to Lodge, it is permissible for us to go beyond the face of the policy because the circumstances expand upon but do not contradict its terms. See *Robert Indus., Inc.* v. *Spence*, 362 Mass. 751, 754 (1973).

nothing in these circumstances which show that the term "building materials" is susceptible of more than one meaning and is, therefore, ambiguous.

Even assuming that Lodge did not receive the brochure prior to the date of the policy (see note 8, *supra*), the brochure does no more than recite, rather than contradict or expand upon, the common understanding of the words "building materials." The brochure, at most, supports Lodge's disagreement with Assurance's interpretation of the policy. "[A]n ambiguity is not created simply because a controversy exists between parties, each favoring an interpretation contrary to the other." *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. at 466, and cases therein cited. See note 5, *supra*.

Further, Lodge's claim of ambiguity in the terms of the policy gains no support from the insurance adjuster's affidavit, in which he recites the trade meaning of the term "building materials." See *Somerset Sav. Bank* v. *Chicago Title Ins. Co.*, 420 Mass. 422, 427-428 (1995), repeating the rule of contract interpretation that express terms have preference over custom and usage. We also note the undisputed facts that, over the years and upon the advice of its insurance agent, Lodge purchased insurance on the basis of cost. See *Save-Mor Supermkts., Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971), holding that it is fair to assume that a lesser cost of insurance means lesser coverage.

3. *Conclusion.* It follows from what we have said that we agree with the Superior Court judge's conclusion of law that the policy clearly provided that the term "building materials" included cement and that, consequently, Lodge's reporting form was overdue, and that Lodge's failure to make a timely report resulted in the loss of coverage under the policy.

*Judgment affirmed.*