# United States Court of Appeals

## For the First Circuit

No. 06-2465

MASSAMONT INSURANCE AGENCY, INC.,

Plaintiff, Appellant,

v.

UTICA MUTUAL INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Boudin, Chief Judge,

Cyr and Stahl, Senior Circuit Judges.

John J. Davis with whom Pierce, Davis & Perritano, LLP was on brief for appellant.
Russell F. Conn with whom Erin K. Higgins, Jacob A. Labovitz and Conn Kavanaugh Rosenthal Peisch & Ford, LLP were on brief for appellee.

June 7, 2007

**BOUDIN**, <u>Chief Judge</u>.  Massamont Insurance Agency, Inc. ("Massamont") is a licensed insurance agency in Massachusetts, specializing in the placement and administration of insurance programs for specialty markets.  It has two programs known as Metrogard and Diplomax, which provide property insurance to schools and municipalities.

In January 2001, Massamont entered into an agreement, to continue indefinitely until terminated according to the terms of the agreement, with the corporate parent of Westchester Fire Insurance Company ("Westchester"), whereby Westchester would write policies under the two programs, with Massamont acting as the managing general agent for the policies (collecting premiums, promoting the program, maintaining records) and performing certain underwriting activities (based on guidelines from Westchester).

The agreement contained an exclusivity clause, central to this case, stating:

> During the term of this Agreement [Massamont] will not solicit for any other insurance carrier, except [Westchester], the Program business.  If [Westchester] elects not to write such business, then [Massamont] is granted the right to submit such business to other insurance carriers under the same terms and conditions as presented to [Westchester].

After disputes between the two companies in late 2002 and early 2003, on July 1, 2003, Massamont placed Metrogard and Diplomax business for eastern Massachusetts and Rhode Island with Axis Specialty Insurance Company ("Axis").  Massamont says it

thought Westchester no longer wanted the business. On July 9, 2003, Westchester sent a letter to Massamont purporting to terminate the agency agreement because of breach of the exclusivity clause.

Thereafter, invoking an arbitration clause in the agreement, Westchester demanded damages from Massamont. Although Westchester asserted that Massamont had poorly managed the insurance (e.g., by poor risk assessment, lack of adjustment of premium on policies with repeated loss claims, and poor file maintenance), its demand sought damages because--allegedly in breach of the agreement--Massamont had diverted business to Axis without first offering it to Westchester.

Massamont then notified Utica Mutual Insurance Company ("Utica"), which provided Massamont with insurance under an Insurance Agents and Brokers Errors and Omissions ("E&O") Liability Insurance Policy--a counterpart for insurance agents of legal or medical malpractice insurance. The Utica policy promised to defend against claims of, and indemnification for, "loss" that "arise[s] out of" a "wrongful act[]" allegedly "committed in the conduct of the insured's business . . . in rendering or failing to render professional services" as an insurance agent.

Utica refused to defend Massamont in the arbitration, taking the position that Westchester's demand claimed losses not covered by the policy. Massamont defended itself in the

-3-

arbitration proceeding which resulted in an award against Massamont for $2.6 million. When Utica refused to indemnify Massamont for this award or defense costs incurred by Massamont in the arbitration, Massamont brought the present suit against Utica in federal district court alleging contractual breach of the Utica policy and for multiple damages under Mass. Gen. Laws. ch. 93A, § 11 (2006).

On summary judgment, the district court held that the arbitration demand sought damages for breach of the exclusivity provision of the agency agreement. Massamont Ins. Agency, Inc. v. Utica Mut. Life Ins. Co., 448 F. Supp. 2d 329, 331 (D. Mass. 2006). The court further held that "the transfer of accounts to another company in breach of the exclusivity clause . . . is not a 'professional' act . . . but rather was simply a business decision" outside the policy's coverage. Id. at 332.

This court reviews grants of summary judgment de novo. Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000). Where facts are not in dispute, the interpretation and application of the policy language is a question of law. Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 61 (1st Cir. 2001). The parties and the district court agree that Massachusetts law governs, and we accept this premise. One Nat'l Bank v. Antonellis, 80 F.3d 606, 608 (1st Cir. 1996).

In delineating the duty to defend, Massachusetts courts say that "if the allegations of the complaint are 'reasonably susceptible' of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." Sterilite Corp. v. Cont'l Cas. Co., 458 N.E.2d 338, 340-41 (Mass. App. Ct. 1983) (internal citations omitted); see also Cont'l Cas. Co. v. Gilbane Bldg. Co., 461 N.E.2d 209, 212 (Mass. 1984). The duty to indemnify depends on whether the judgment, if any, is for a covered loss. Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co., 545 N.E.2d 1156, 1158 (Mass. 1989).

We agree with the district judge that the gravamen of the arbitration demand was the breach of the exclusivity provision. Although Westchester's charges of negligent operation by Massamont were set forth as "background," the next section of the demand was titled "Massamont Breaches the Exclusivity Provision of the Agreement" and focused on Massamont's discussions with Axis and the subsequent transfer of $12 million worth of business to Axis.

Consonantly, in the section of the demand entitled "Damages Suffered by Westchester," Westchester sought to recover damages to Westchester caused by Massamont's breach of the exclusivity provision in the agreement. Thus, both the claim and ad damnum were directed to the exclusivity provision. Also, pertinent to the duty to indemnify, the arbitrator's award stated that "Massamont breached the Agency Agreement" and awarded $2.6

million in damages to Westchester; the parties' post-hearing briefs in the arbitration make clear that the breach in question was the transfer of the business to Axis.

We also agree with the district judge that the diversion of business by Massamont in breach of its exclusivity obligation is not within the coverage provided by the Utica policy. As noted, that coverage is for wrongful acts "committed in the conduct of the insured's business . . . in rendering or failing to render professional services as" an insurance agent. This would include services, whether for Westchester or for Massamont's own clients, but only insofar as they were "professional services."

A promise by an agent to represent one insurer exclusively for certain lines of insurance is not itself a professional service, nor does a diversion of business in breach of such a contract comprise the performance of professional service. The closest cases interpreting Massachusetts insurance law hold that overcharging clients in fees, even though for work done in a professional capacity, is not itself a professional service covered by malpractice or E&O policies.[1]

---

[1]Reliance Nat'l Ins. Co. v. Sears, Roebuck & Co., 792 N.E.2d 145, 148 (Mass. App. Ct. 2003) (lawyer fee setting not within malpractice policy); Med. Records Assocs., Inc. v. Am. Empire Surplus Lines Ins., 142 F.3d 512, 515-16 (1st Cir. 1998) (E&O policy did not cover billing practices of a medical records processing business).

Both sides have cited Smartfoods, Inc. v. Northbrook Prop. & Cas. Co., 618 N.E.2d 1365 (Mass. App. Ct. 1993), in part because it involved breach of an exclusivity agreement; but the policy in that case was a commercial general liability policy with quite different language. PMI Mortgage Ins. v. Am. Int'l Specialty Lines Ins. Co., 394 F.3d 761, 763 (9th Cir. 2005), cited by Massamont, involved a policy that defined "professional services" quite broadly.

Often courts construing such policies treat as a touchstone whether or not the wrongful act draws on professional skills as opposed to ordinary business decision-making; and this criterion too works against Massamont. The SJC, in a malpractice case otherwise quite different than our own, quoted approvingly the Supreme Court of Nebraska's description of "professional services":

> Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind. . . . A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill . . . .

Roe v. Fed. Ins. Co., 587 N.E.2d 214, 217 (Mass. 1992) (quoting Marx v. Hartford Accident & Indem. Co., 157 N.W.2d 870, 871-72 (Neb. 1968)).

Here, the decision to divert business may have been caused by friction over insurance matters but it was a distinct business decision by Massamont as to whether to maintain a

relationship with a particular insurer--like leasing a building, buying supplies or charging for services.  Such a decision is not the provision of professional services--the target of an E&O or malpractice policy.  The Massachusetts case law supporting this view, see note 2, above, is bolstered by case law elsewhere specifically directed toward insurance agents.

For example, in holding that a trade secret claim brought against an insurance agent was not within "professional services," the New York Court of Appeals explained in Albert J. Schiff Associates, Inc. v. Flack, 417 N.E.2d 84, 88 (N.Y. 1980):

> The renting of an office, the engagement of employees, arrangements to expand the size of one's activities, these may all have some connection with a covered business or profession.  But, while they may set the stage for the performance of business or professional services, they are not the professional services contemplated by this special coverage.  An errors and omissions policy is intended to insure a member of a designated calling against liability arising out of the mistakes inherent in the practice of that particular profession or business.

Other cases are similar.[2]

Massamont argues that its alleged mismanagement of insurance for Westchester played a causal role in the "background"

---

[2]Employers Reins. Corp. v. Caswell, 490 N.W.2d 145, 149 (Minn. App. Ct. 1992) (diversion of revenues for improper purposes); Richards v. Fireman's Fund Ins. Co., 417 N.W.2d 663, 668 (Minn. App. Ct. 1988) (employment dispute between general insurance agents and managing agent); cf. Bayer v. Employers Reins. Corp., 383 N.W.2d 858, 862 (S.D. 1986) (insurance agents also acting as mortgage brokers for insurance clients).

disagreements between the two companies; that the disagreements led Massamont to divert business to Axis; and that the diversion underlies the alleged breach of the exclusivity provision. But while the policy does use "arising out of" language (construed generously in Massachusetts, <u>Bagley</u> v. <u>Monticello Ins. Co.</u>, 720 N.E.2d 813, 816 (Mass. 1999)), a mere remote causal connection is not enough.[3]

Massamont also says that Utica violated governing law by looking outside the four corners of the arbitration demand and the policy in denying coverage. There are limits on the insurer's right to rely on facts extrinsic to the complaint and policy in refusing to defend a suit otherwise colorably triggering a duty to defend. <u>E,g.</u>, <u>Desrosiers</u> v. <u>Royal Ins. Co. of Am.</u>, 468 N.E.2d 625, 627-28 (Mass. 1984). The aim is to make the duty to defend operate mechanically.

Such limits play no role in this case. Whatever the scope of Utica's investigation before it declined to defend, Utica's duty to defend Massamont is negated by merely comparing the arbitration demand with the E&O policy's language. That comparison

---

[3]<u>See, e,g.</u>, <u>Rischitelli</u> v. <u>Safety Ins. Co.</u>, 671 N.E.2d 1243, 1246 (Mass. 1996) (auto insurance does not cover an assault that grows out of a driving incident); <u>Roe</u>, 587 N.E.2d at 218. Although Massachusetts case law is not seamless, these cases seem to us more on point than a reference to "but for" causation in <u>Bagley</u>, 720 N.E.2d at 816, and <u>Fuller</u> v. <u>First Fin. Ins. Co.</u>, 858 N.E.2d 288, 292 (Mass. 2006) (rape arose out of excluded assault and battery in "a single criminal episode").

shows that the demand's gravamen was breach of an exclusivity agreement, not a professional services decision, and was therefore outside the scope of an E&O policy.

The duty to indemnify, also asserted by Massamont, is ordinarily narrower than the duty to defend. "If an insurer has no duty to defend, based on the allegations in the plaintiff's complaint, it necessarily follows that the insurer does not have a duty to indemnify." Bagley, 720 N.E.2d at 817. Further, the basis for the award, which may be consulted, Travelers Ins. Co. v. Waltham Indus. Labs. Corp., 883 F.2d 1092, 1099 (1st Cir. 1989), confirms that the damages were awarded for breach of the agency agreement.

Finally, as to Massamont's Chapter 93A claim for unfair or deceptive practices, this too was dismissed by the district court. Much of this count rested on Utica's denial of coverage, which we have ruled proper. Delays in resolving the coverage question are also charged but, given that Utica had no duty to defend, Massamont had to explain why delay alone increased its defense costs and this it has not done. Dryden Oil Co. of New England, Inc. v. Travelers Indem. Co., 91 F.3d 278, 290 n.17 (1st Cir. 1996).

Affirmed.