# United States Court of Appeals
## For the First Circuit

No. 15-1220

UTICA MUTUAL INSURANCE COMPANY,

Plaintiff, Appellant,

v.

HERBERT H. LANDY INSURANCE AGENCY, INC.,

Defendant, Appellee,

CRES INSURANCE SERVICES, LLC,

Defendant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Indira Talwani, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Lipez, Circuit Judges.

Erin K. Higgins, with whom Russell F. Conn, Katherine A. Kelter, and Conn Kavanaugh Rosenthal Peisch & Ford LLP were on brief, for appellant.
John A.K. Grunert, with whom Goganian & Associates, P.C. was on brief, for appellee.

April 19, 2016

**HOWARD**, **Chief Judge**.  Utica Mutual Insurance Company ("Utica") appeals from a summary judgment order requiring it to defend its insured Herbert H. Landy Insurance Agency ("Landy") in a California state court lawsuit.  Agreeing with the district court that Utica is obligated to defend Landy under its professional liability insurance policy, we affirm.

## I. Background

Landy and Utica each are insurance companies.  Landy provides insurance to real estate professionals, and Utica insured Landy under a professional liability insurance policy.  This policy, which the parties agree is governed by Massachusetts law, contains a "duty to defend" obligation that required Utica to defend Landy in certain lawsuits arising from errors and omissions in Landy's provision of professional services as an insurance broker and agent.

Landy alleges that Utica's duty to defend was triggered when Landy was sued by CRES Insurance Services, LLC ("CRES").  CRES is a competitor of Landy in the California real estate professional liability insurance market.  CRES sued Landy in California state court, alleging that Landy had engaged in unfair business practices in violation of California state law.[1]

---

[1] The underlying action is CRES Ins. Servs. LLC v. Sun Coast Gen. Ins. Agency, Inc., Herbert H. Landy Ins. Agency, Inc., Alexander Anthony Ins., LLC, d/b/a Alexander Anthony Ins. Agency,

Specifically, CRES alleged that California law divides the relevant insurance market between "admitted" and "surplus" insurers. See generally Cal. Ins. Code § 1763; Cal. Code Regs. tit. 10, §§ 2131-2140; 39 Cal. Jur. 3d Insurance Companies § 227.[2] According to CRES's complaint, admitted insurers generally charge higher premiums than surplus insurers. Nevertheless, California law favors the admitted insurers. See Cal. Code Regs. tit. 10, § 2132(a). California permits an insurance broker to offer a surplus insurer's policy only in limited circumstances when the admitted pool is deemed inadequate. See Cal. Ins. Code § 1763(a); Cal. Code Regs. tit. 10, § 2132(b). CRES alleged that Landy improperly offered surplus insurers' policies despite the adequacy of the admitted market.

Based on these facts, CRES asserted two causes of action. CRES's first claim was a statutory claim alleging that Landy's violation of the state insurance code constituted unfair business practices. See Cal. Bus. & Prof. Code § 17200, et seq.

CRES's second claim was for negligence, alleging that Landy's conduct negligently interfered with CRES's prospective

LLC, and Does 1 to 100, No. 30–2009–00332596–CU–BT–CJC, (Cal. Sup. Ct., Orange Cty.). This action has since settled.

[2] "Admitted" insurers are those admitted to do business in California by the state insurance commissioner. See Cal. Ins. Code § 700. "Surplus" insurers, also known as nonadmitted insurers, are those that are not so admitted and are subject to restrictions on their ability to provide insurance in California. See Cal. Ins. Code §§ 25, 1763.

economic advantage. Specifically, CRES asserted that Landy "failed to act with reasonable care," including "in the solicitation and placement of [insurance policies]." It further alleged that Landy "failed to conduct a diligent search of the admitted market, filed falsified documentation relating to the search, and evaded scrutiny . . . by failing to file required statements."

Landy demanded that Utica defend it in the CRES lawsuit under the policy. In response, Utica filed this action in Massachusetts federal district court, seeking a declaration that CRES's negligence claim did not trigger its duty to defend.[3]

The parties dispute the meaning of two policy provisions. First, the policy covers only suits arising from Landy's errors or omissions in "rendering or failing to render professional services" as an insurance broker or insurance agent.[4]

---

[3] Landy concedes that CRES's statutory claim does not trigger the duty to defend. And Utica does not contest that if CRES's negligence claim triggers the duty to defend, then Utica is responsible for defending the entire CRES lawsuit, as well as for paying Landy's attorney fees and costs in this action.

[4] Specifically, the policy provides that in order to trigger Utica's duty to defend, Landy's

> "loss" must arise out of "wrongful acts" committed in the conduct of the insured's business, wherever committed or alleged to have been committed, by the insured or any person for whose "wrongful acts" the insured is legally liable in rendering or failing to render professional services as:
> (1) A General Insurance Agent;
> (2) An Insurance Broker;

- 4 -

It does not provide comprehensive liability insurance.  Utica argues that CRES's negligence claim did not arise from alleged errors in Landy's professional insurance services, but rather from Landy's allegedly unfair business practices.  Landy's position is that the two are not mutually exclusive:  Landy's allegedly unfair business practices were committed in the course of providing allegedly negligent professional insurance services.

Second, the policy expressly excludes coverage for "unfair competition of any type."  The policy also contains an exclusion for intentional misconduct.[5]  Utica argues that, in order

---

(3) An Insurance Agent;
(4) An Insurance Consultant;
(5) A Managing, Master, or Brokerage General Agent;
. . .
(7) A Surplus Lines Broker; . . . .
"Wrongful act" is defined as "any negligent act, error, or negligent omission to which this insurance applies."
"Loss" means
> any amount which an insured becomes legally obligated to pay as damages for any "claim" arising out of a "wrongful act" to which this insurance applies and shall include judgments and settlements.  To the extent allowed by law, "loss" shall include punitive or exemplary damages.  "Loss" shall not include:
> a. Fines or penalties imposed by law;
> b. Taxes; and
> c. Matters which may be deemed uninsurable under the law pursuant to which the policy shall be construed.

[5] The intentional misconduct exclusion applies to
> [a]ny active and deliberate, dishonest, criminal, fraudulent, malicious, or knowing conduct committed or alleged to have been committed by or at the direction of the

- 5 -

to give independent meaning to both the unfair competition and intentional misconduct exclusions, the unfair competition provision excludes not only intentional unfair competition, but also negligent unfair competition.  Utica characterizes CRES's negligence claim as just such a claim of negligent unfair competition.

Landy disagrees for two reasons.  It says that under Massachusetts law, "unfair competition" encompasses only conduct that misleads consumers, and the CRES complaint includes no allegations of consumer confusion.  Alternatively, Landy argues that the exclusion does not apply to negligent performance of professional services, even if that negligence also harmed a business competitor.

On competing motions for summary judgment, the district court denied Utica's motion and granted summary judgment to Landy. UTICA Mut. Ins. Co. v. Herbert H. Landy Ins. Agency Inc., No. 13-

---

insured.  If a "suit" is brought against the insured alleging both "wrongful acts" within the coverage of the policy and dishonest, fraudulent, malicious, or criminal conduct, then [Utica] will defend the insured in the trial court, but [Utica] shall not have any liability for any judgment for dishonest, fraudulent, malicious, or criminal conduct nor shall [Utica] have any further obligation to defend after judgment in the trial court. This exclusion applies only to insureds who participated in, acted with knowledge of, or acquiesced to such conduct.

11471, 2014 WL 5475038, at *1 (D. Mass. Oct. 29, 2014).  It held that the policy required Utica to defend Landy in the CRES lawsuit because CRES's negligence claim arose out of Landy's allegedly negligent performance of professional services, and because the exclusion for unfair competition did not cover CRES's negligence claim.

**II. Analysis**

We review summary judgment decisions de novo.  Batista v. Cooperativa De Vivienda Jardines De San Ignacio, 776 F.3d 38, 41 (1st Cir. 2015).  We may affirm a grant of summary judgment on any ground supported by the record, so long as there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Id. at 42.  "Where [as here] facts are not in dispute, the interpretation and application of the [insurance] policy language is a question of law.  The parties and the district court agree that Massachusetts law governs, and we accept this premise."  Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co., 489 F.3d 71, 72 (1st Cir. 2007) (citation omitted).  Generally the insured bears the initial burden of establishing coverage, while the insurer bears the burden on exclusions from coverage.  Boazova v. Safety Ins. Co., 968 N.E.2d 385, 390 (Mass. 2012).

Three sets of settled principles under Massachusetts decisional law guide our analysis.  First, on the duty to defend, the Massachusetts Supreme Judicial Court has stated that

> [a]n insurer has a duty to defend an insured when the allegations in a complaint are reasonably susceptible of an interpretation that states or roughly sketches a claim covered by the policy terms. . . .  In order for the duty of defense to arise, the underlying complaint need only show, through general allegations, a possibility that the liability claim falls within the insurance coverage.  There is no requirement that the facts alleged in the complaint specifically and unequivocally make out a claim within the coverage.  However, when the allegations in the underlying complaint lie expressly outside the policy coverage and its purpose, the insurer is relieved of the duty to investigate or defend the claimant.  The nature of the claim and not the ultimate judgment against the insured triggers the duty to defend even though the plaintiff may not succeed and the claim may, in fact, be weak or frivolous. . . .

Metropolitan Prop. & Cas. Ins. Co. v. Morrison, 951 N.E.2d 662, 667 (Mass. 2011) (citations and internal formatting omitted).

Second, the Massachusetts court construes insurance contracts in the same way as ordinary contracts.  Id. at 671.

> [W]e must construe the words of the policy in their usual and ordinary sense.  Every word must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable.  If in doubt, we consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.  When confronting ambiguous language, we construe the policy in favor of the insured and against the drafter, who is invariably the insurer, unless specific

- 8 -

> policy language is controlled by statute or prescribed by another authority.  This rule of construction applies with particular force to exclusionary provisions.

See id. (citations and internal formatting omitted).

Third, for purposes of professional service insurance policies, Massachusetts defines

> [a] professional act or service [a]s one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual.  In determining whether a particular act is of a professional nature or a professional service we must look not to the title or character of the party performing the act, but to the act itself. . . .  [T]here must be a causal relationship between the alleged harm and the complained-of professional act or service . . . not an act or service that requires no professional skill.  Common sense, of course, will always provide a useful guide in differentiating covered from uncovered cases.

Roe v. Fed. Ins. Co., 587 N.E.2d 214, 217 (Mass. 1992) (internal formatting omitted).

The touchstone for professional services coverage is whether the alleged wrongful act or omission is inherent in the practice of the profession.  See id.; see also Massamont, 489 F.3d at 73.  Thus, professional liability policies generally do not cover, for example, business management activities, business decisions of a nonprofessional nature, activities not requiring professional expertise, or activities totally unrelated to the

profession.  See Med. Records Assocs., Inc. v. Am. Empire Surplus Lines Ins. Co., 142 F.3d 512, 514-16 (1st Cir. 1998).  While these other acts may "set the stage" for the performance of professional services, they are not themselves professional services and thus are not covered by most professional liability policies. Massamont, 489 F.3d at 74.[6]

## A. Professional Liability

Applying this law to the facts here, CRES's complaint can be reasonably construed to sketch a professional liability claim, and it is therefore covered by the policy.  CRES's negligence claim alleged that Landy "failed to act with reasonable care in the solicitation and placement [of insurance policies]." It further alleged that Landy "failed to conduct a diligent search of the admitted market, filed falsified documentation relating to the search, and evaded scrutiny . . . by failing to file required statements."  As we explain below, these activities -- soliciting and placing insurance policies, searching the admitted market, and

---

[6] This is not to say that a professional liability policy can never cover errors in non-professional activities.  Whether it does depends on how the policy is worded.  See, e.g., Visiting Nurse Ass'n of Greater Phila. v. St. Paul Fire & Marine Ins. Co., 65 F.3d 1097, 1102 (3d Cir. 1995) (citing Biborosch v. Transamerica Ins. Co., 603 A.2d 1050 (Pa. Super. Ct. 1992)) (broadly worded policy covering profession of "Manager" covered wrongful employment termination suit).  The policy here, however, is not so broadly worded, but covers the usual, limited range of professional errors like those recognized in Roe, Massamont, and Medical Records Associates.

filing related documentation -- are part of the professional activity of an insurance agent or broker.

Generally speaking, only insurance professionals solicit and place insurance policies and conduct due diligence into the admitted insurance market.[7]  Indeed, California law criminalizes

---

[7] As described by Landy:

> "Placing" a real estate agents and brokers errors and omissions insurance policy typically involves, among other things, understanding the type and extent of coverage a particular applicant needs; determining what endorsements may be appropriate for a particular applicant; determining whether a particular insurer is a good match for the particular applicant; rating the applicant and determining what the premium should be in light of the applicant's potential exposure, claims history, and level of coverage; determining what regulatory requirements must be met if a particular applicant is placed with a particular insurer; and making certain that required regulatory filings are properly made. . . .
> Landy employees were trained, either through formal education or through experience in the insurance industry or both, to, among other things, evaluate the complexity of transactions applicants typically handle, investigate and evaluate the claims histories of applicants, evaluate the level of experience of applicants' licensed sales staffs, investigate applicants' relationships with and degree of control over independent contractors and part-time employees, investigate the extent to which an applicant's service and operations or syndication activities may affect coverage expectations, identify and understand specialized statutes and regulations that are relevant to placement of coverage for the applicant with particular insurers, and evaluate the adequacy of filings

the transaction of insurance without a valid license.  Cal. Ins. Code § 1633.  Moreover, these activities are not ordinary business activities common to other professions -- such as renting a building, purchasing supplies, charging fees, hiring employees, or contracting to expand one's business.  See Massamont, 489 F.3d at 73-74.  Nor are they business decisions of a non-professional nature, such as violating a contract in order to procure a business advantage, see id., or stealing trade secrets or other property, see Albert J. Schiff Assocs., Inc. v. Flack, 417 N.E.2d 84, 87-88 (N.Y. 1980); Crum & Forster Managers Corp. v. Resolution Trust Corp., 620 N.E.2d 1073, 1079 (Ill. 1993).

Neither are these activities ones not requiring professional expertise, such as sending a client a bill, answering a phone call, driving to a specified location, see Med. Records Assocs., 142 F.3d at 512, or discarding old files, see Saint Consulting Grp., Inc. v. Endurance Am. Specialty Ins. Co., 699 F.3d 544, 555 (1st Cir. 2012).  To the contrary, solicitation and placement of insurance policies and research of the admitted

---

that those statutes or regulations may require.
Placing a real estate agents and brokers errors and omissions insurance policy typically draws on special training or attainments, exacts the use or application of special learning or attainments, and involves exercise of professional judgment.
Utica did not contest the factual accuracy of these statements, although it did assert that they were not material.

- 12 -

insurance market require knowledge and skills particular to the insurance profession. Finally, there is no claim that these activities are wholly unrelated to the insurance profession. Cf., e.g., Roe, 587 N.E.2d at 218 (sexual assault is unrelated to profession of dentistry).

Utica's counterarguments are unpersuasive. First, Utica contends that the labels in the complaint, such as "negligence" and "reasonable care" are not dispositive. Rather, Utica urges us to assess the source of the alleged injury. And because the gravamen of the CRES complaint was Landy's unfair business practices, not its professional negligence, the policy does not apply.

Utica is correct that labels are not controlling, see Bagley v. Monticello Ins. Co., 720 N.E.2d 813, 817 (Mass. 1999), and that professional and business activities are not identical, see Med. Records Assocs., 142 F.3d at 515. But neither are these two categories mutually exclusive, for the provision of insurance is both a profession and a business. Naturally then, some professional decisions also affect business practices. Such is the case here. Landy's allegedly unfair business practices derive from alleged errors in the performance of professional services: negligent solicitation and placement of insurance policies and failure to conduct due diligence into the admitted insurance market.

- 13 -

Second, Utica suggests that professional liability insurance does not cover claims by competitors at all, relying on an unpublished district court opinion in Welch Foods, Inc. v. Nat'l Union Fire Ins. Co., No. 09-12087, 2010 WL 3928704, at *5 (D. Mass. Oct. 1, 2010) aff'd on other grounds, 659 F.3d 191 (1st Cir. 2011). Welch Foods addressed whether professional liability insurance for "promotion and marketing services" covered false advertising claims brought by the insured's competitor. See id. at *5. The district court in that case observed that professional liability insurance is "usually intended to provide liability protection for insureds whose clients hire them to provide professional services." Id. Such insurance is "not intended to cover claims by competitors." Id. (citing Visiting Nurse Ass'n, 65 F.3d at 1102).

That general observation is unexceptional, but it is not a categorical rule. While professional liability policies often do not cover competitor suits alleging negligent business decisions, the reason is that the alleged wrongful act is not inherent in the practice of the profession, not that the suit was brought by a competitor. See Roe, 587 N.E.2d at 217. The gauge is the nature of the act, not the identity of the parties. See id.

Relatedly, Utica argues that the policy does not apply because Landy did not breach any professional duties owed to CRES.

- 14 -

It is true that CRES did not allege that Landy breached professional duties to it. But professional liability coverage is not necessarily restricted to lawsuits based on allegations of breach of professional duty to the plaintiff. See Harad v. Aetna Cas. & Sur. Co., 839 F.2d 979, 984 (3d Cir. 1988). And there is no reason to read this policy so narrowly.

Here, the policy covers losses "aris[ing] out of 'wrongful acts' . . . in rendering or failing to render professional services." "The phrase 'arising out of' must be read expansively," and suggests "but for" causation. Bagley, 720 N.E.2d at 816. Thus, the policy applies where, as here, CRES alleges injuries actually caused by Landy's wrongful performance of professional services. CRES need not allege any breach of professional duties owed to CRES itself.

## B. Exclusion for "Unfair Competition of Any Type"

Turning to the policy's exclusion for "unfair competition of any type," Utica has not met its burden of establishing that the exclusion applies. In construing insurance policies, some Massachusetts courts have interpreted "unfair competition" according to its common law meaning: "conduct that causes confusion on the part of consumers, such as palming off or passing off." Open Software Found., Inc. v. U.S. Fid. & Guar. Co., 307 F.3d 11, 17 (1st Cir. 2002). See also generally Datacomm Interface, Inc. v. Computerworld, Inc., 489 N.E.2d 185, 191-92

- 15 -

(Mass. 1986) (discussing various forms of unfair competition). Accordingly, "unfair competition" does not encompass the full range of unfair business practices prohibited by state statutes. See Open Software, 307 F.3d at 19 n.9 ("Massachusetts courts construe the term 'unfair competition' in a liability insurance policy not only to signify that common law tort, but also to distinguish it from the statutory cause of action for unfair business practices under Chapter 93A.").

The policy at issue here refers to "unfair competition of any type." Applying the Massachusetts definition as described by the cases above, this means "any type" of "conduct that causes confusion on the part of consumers."[8] The CRES lawsuit, however, did not allege consumer confusion. Therefore, given the meaning of "unfair" competition in Massachusetts law, Utica has not shown that the exclusion applies.

In an attempt to get around this plain reading, Utica argues that the modifier "any type" expands "unfair competition" to encompass CRES's negligence claim -- even though that claim did not allege consumer confusion. We disagree. Read naturally, the phrase "any type" refers to every kind of the noun that it modifies. See, e.g., Ali v. Fed. Bureau of Prisons, 552 U.S. 214,

---

[8] We take Massachusetts law as described in the cases above but offer no prediction about whether in the future Massachusetts law might be more flexible so as to encompass other types of conduct as "unfair competition."

220 (2008) (The "use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officers of whatever kind."); see also *any*, Webster's Third New International Dictionary (1993) (defining "any" to mean "one or some indiscriminately of whatever kind"). And while the word "any" may have an "expansive" meaning, it does not have a "transformative" one: it can "never change in the least[] the clear meaning of the phrase" it modifies. Freeman v. Quicken Loans, Inc., 132 S. Ct. 2034, 2042 (2012); see also Ali, 552 U.S. at 220 n.4. For example, "any type of fruit" includes apples, blueberries, cranberries, and every other kind of fruit. It does not include leafy vegetables or red meat.

Similarly, the provision here should be construed consistently with the term of art "unfair competition." See Lodge Corp. v. Assurance Co. of Am., 775 N.E.2d 1250, 1252 n.4 (Mass. App. Ct. 2002) ("technical terms and words of art are given their technical meaning when used in a transaction within their technical field" (quoting Restatement (Second) of Contracts § 202(3)(b) (1981))). Accordingly, "any type of unfair competition" means every kind of conduct leading to consumer confusion. At the very least, this is a reasonable construction. Even assuming that a more expansive construction is also reasonable, Massachusetts law requires us to adopt the construction more favorable to the insured, Landy. See Metropolitan, 951 N.E.2d at 671.

Utica also makes two further arguments based on the canon against surplusage. Under this canon, "[e]very word in an insurance contract must be presumed to have been employed with a purpose and must be given meaning and effect whenever practicable." Valley Forge Ins. Co. v. Field, 670 F.3d 93, 99 (1st Cir. 2012). Utica first argues that the provision must embrace forms of unfair competition not recognized by the common law -- such as CRES's negligence claim -- lest the modifier "any type" be surplus.

Even assuming that the provision embraces forms of competition not recognized by the common law, however, we do not think that it necessarily covers CRES's negligence claim. As the Supreme Judicial Court has recognized, the traditional core of unfair competition is consumer confusion as to the source or origin of goods or services. Datacomm, 489 N.E.2d at 192. However, some courts have expanded the term beyond its common law meaning to include "confusion as to sponsorship, endorsement, or some other affiliation." Id. Thus, "any type" can be reasonably construed to embrace these other forms of consumer confusion. But even this expanded reading does not extend beyond consumer confusion. CRES's negligence claim would not be excluded, and again, we are required to adopt the reasonable construction more favorable to the insured. See Metropolitan, 951 N.E.2d at 671.[9]

---

[9] By doing so, we do not mean to transform "any type of unfair competition" into a new term of art under Massachusetts law. "As

Utica's second surplusage canon-based argument fares no better. Utica says that "any type" must embrace negligence claims since a different provision of the policy excludes intentional claims. This argument is unavailing, however. To restate, the CRES lawsuit did not allege any kind of consumer confusion, whether intentional or negligent.[10]

## III. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

a federal court sitting in diversity, we try to apply our best understanding of the principles [Massachusetts] has adopted. It is not our role to expand [Massachusetts] law; that is left to the courts of [Massachusetts]." Douglas v. York Cty., 433 F.3d 143, 149 (1st Cir. 2005).

[10] The parties agree that if the judgment is affirmed on appeal, then the district court's award of attorney fees and costs was proper.