# United States Court of Appeals
## For the First Circuit

No. 18-1968

ZURICH AMERICAN INSURANCE COMPANY,

Plaintiff, Appellant,

v.

ELECTRICITY MAINE, LLC; EMILE CLAVET; KEVIN DEAN;
SPARK HOLDCO, LLC; PROVIDER POWER, LLC; KATHERINE VEILEUX AND
JENNIFER CHON, individually and behalf of all other similarly
situated parties,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Nancy Torresen, Chief U.S. District Judge]

Before

Howard, Chief Judge,
Boudin and Barron, Circuit Judges.

John S. Whitman, Esq., with whom Richardson, Whitman, Large,
& Badger were on brief for appellant.
Timothy E. Steigelman, with whom Melissa A. Hewey, and
Drummond Woodsum were on brief for appellees.

June 17, 2019

**BARRON**, <u>**Circuit Judge**</u>.    Electricity Maine LLC is a private energy company that serves customers in Maine.  It held a D&O insurance policy (the "Policy") with Zurich American Insurance Co. ("Zurich") when, in November of 2015, a class action was brought against it, Spark Holco LLC, Emile Clavet, and Kevin Dean (together "Electricity Maine").  The named plaintiffs were two of Electricity Maine's customers, Jennifer Chon and Katherine Veilleux.  They sought to represent a class of nearly 200,000 of the company's customers.  The complaint alleged that Electricity Maine had engaged in misconduct that resulted in customers receiving higher bills than Electricity Maine had represented that they would be.  The complaint sought class-wide damages totaling approximately $35 million for a variety of Maine state common law claims, as well as for claims under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962, 1964; and the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. tit. 5 § 207.

Electricity Maine tendered notice of the suit to Zurich.  Zurich then initiated the present action against Electricity Maine in the United States District Court for the District of Maine on May 3, 2017, based on diversity jurisdiction.  28 U.S.C. § 1332.  Zurich seeks a declaratory judgment that it has no duty to defend Electricity Maine against the underlying action.  Zurich contends

that Electricity Maine's policy[1] with Zurich provides, in relevant part, that Zurich has a duty to defend Electricity Maine against any lawsuit that seeks damages for "bodily injury" caused by an "occurrence" and that the complaint in the underlying action fails to allege that Electricity Maine engaged in conduct that qualifies as an "occurrence" or that caused any "bodily injury."

Zurich and Electricity Maine cross-moved for summary judgment on a stipulated record. The District Court ruled for Electricity Maine. Zurich Am. Ins. Co. v. Electricity Maine LLC, 325 F. Supp. 3d 198, 202-03 (D. Me. 2018). This appeal followed. We affirm.

**I.**

We review the District Court's decisions on the parties' motions for summary judgment de novo. See Utica Mut. Ins. Co. v. Herbert H. Landy Ins. Agency, Inc., 820 F.3d 36, 41 (1st Cir. 2016). We must affirm the judgments below if there is no genuine issue of material fact in dispute and the District Court's conclusions are correct as a matter of law. See id.

The parties agree that the only issues presented on appeal concern the District Court's interpretation of the relevant provisions of the Policy. Those issues present matters of law,

---

[1] The terms of the Policy were set forth in three successive contracts. The parties agree that the relevant language is identical from one contract to the next, and, therefore, should be treated as one policy.

which we review de novo.  Massamont Ins. Agency, Inc. v. Utica Mut. Ins. Co., 489 F.3d 71, 72 (1st Cir. 2007).

The parties agree that Maine law controls the interpretive questions at issue on appeal.  Under Maine law, "[i]f the allegations in the underlying . . . action are within the risk insured against and there is any potential basis for recovery, the insurer must defend the insured regardless of the actual facts on which the insured's ultimate liability may be based."  Elliott v. Hanover Ins. Co., 711 A.2d 1310, 1312 (Me. 1998).

To determine if the allegations in the underlying action are within the risk insured, we must "compar[e] the complaint with the terms of the insurance contract."  Id.  The key terms in the Policy that define the "risk insured" are "occurrence" and "bodily injury."

## II.

The Policy defines an "occurrence" to be "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  The Policy does not define what constitutes an "accident," but the Maine Law Court (the "Law Court") has explained that an "accident" is "commonly understood to mean . . . an event that takes place without one's forethought or expectation; an undesigned, sudden, and unexpected event."  Kelley v. N.E. Ins. Co., 168 A.3d 779, 782 (Me. 2017) (quoting Patrick v. J.B. Ham Co., 111 A. 912, 915 (Me. 1921)).

- 4 -

The complaint in the underlying action sets forth a number of claims for intentional torts, but also includes a claim for "negligence" and a claim for "negligent misrepresentation." The negligence and negligent misrepresentation claims would appear to seek recovery for the kind of conduct that fits comfortably within the definition of an "accident," as these claims require proof only of "event[s] that take[] place without one's forethought or expectation." Kelley, 168 A.3d at 782. Indeed, the Law Court has held multiple times that "broad conclusory allegations of 'negligence,'" pled in the alternative to claims that require proof of intentional misconduct, constitute allegations of "accidental" or "[un]intentional" activity that suffice to trigger the duty to defend under policies that cover "accidents." Travelers Indem. Co. v. Dingwell, 414 A.2d 220, 225-27 (Me. 1980) (finding a duty to defend for an "accident[]" where the complaint alleged negligent acts in the alternative to intentional conduct); Lavoie v. Dorchester Mut. Fire Ins. Co., 560 A.2d 570, 571 (Me. 1989) (finding a duty to defend under a policy with an exclusion for "intentional" acts where a complaint alleged negligence as an alternative to its intentional assault and battery claims).

To blunt the force of this precedent, Zurich relies on two Law Court cases -- Allocca v. York Ins. Co. of Maine, 169 A.3d 938 (Me. 2017) and Vermont Mut. Ins. Co. v. Ben-Ami, 193 A.3d 178 (Me. 2018) -- that were decided after Travelers and Lavoie. But,

- 5 -

neither Allocca nor Ben-Ami involved complaints that, like the complaint at issue here, expressly allege claims for negligence (or negligent misrepresentation) alongside claims for intentional torts. Allocca, 169 A.3d at 940-41; Ben-Ami, 193 A.3d at 180-81.

Zurich also attempts to distinguish Travelers and Lavoie from the present case on the ground that, unlike in those cases, the facts alleged in the complaint here "make it impossible to sustain the fiction that Electricity Maine was 'negligent' and expected no harm to befall its customers." Zurich is right that the portion of the complaint that sets forth the RICO claims, alleges that Electricity Maine promised its customers rates that were lower than those offered by the public utilities, raised those rates unexpectedly after the first year of the customers' contracts, notified its customers about the rate increases through emails that were sent to the customers' spam folders, and required that customers pay a $100 fee if they wanted to leave these more expensive contracts. And, Zurich is also right that this portion of the complaint does allege that the company engaged in that conduct intentionally, just as one would expect, given that RICO claims seek recovery for intentional torts.

But we do not see why, when the complaint goes on to incorporate by reference the same factual allegations into its claims for negligence and negligent misrepresentation, it must be read to be alleging, with respect to those claims, that Electricity

Maine acted intentionally rather than inadvertently. Those claims, unlike the RICO claims, do not require proof of intentional conduct. We note, moreover, that this conclusion accords with Harlor v. Amica Mut. Ins. Co, 150 A.3d 793 (Me. 2016). There, the Law Court explained that the duty to defend is triggered so long as a complaint "reveals . . . any legal or factual basis that could potentially be developed at trial" for proving conduct that would fall within the risk insured. Id. at 797 (emphasis added). And, as we explained in Auto Europe, LLC v. Conn. Indem. Co., after canvassing Maine law, the duty to defend is triggered under the state's law "where a narrow reading of the complaint's factual allegations might preclude coverage, but the alleged cause of action is sufficiently broad that a modified version of the facts could be developed at trial to show liability." 321 F.3d 60, 68 (1st Cir. 2003).

That is not to say that either the negligent misrepresentation claim or the negligence claim has merit. But, even a "broad, conclusory allegation, such as negligence" that is "legally insufficient to withstand a motion to dismiss" will trigger an insurer's duty to defend "whenever the allegations show a potential that liability will be established within the insurance coverage." Travelers, 414 A.2d at 226.

Zurich does point to precedents in which various courts, including our own, have, in construing Maine law, concluded that

a particular complaint in an underlying suit failed to set forth factual allegations of a type that could trigger an insurer's duty to defend its insured against claims that had been set forth in that complaint. See Lyman Morse Boatbuilding, Inc. v. N. Assurance Co. of Am., 772 F.3d 960, 966 (1st Cir. 2014); Prime Tanning Co. v. Liberty Mut. Ins. Co., 750 F. Supp. 2d 198, 214-15 (D. Me. 2010); Baywood Corp. v. Me. Bonding & Casualty Co., 628 A.2d 1029, 1031 (Me. 1993); A. Johnson & Co., Inc. v. Aetna Casualty and Surety Co., 933 F.2d 66, 75 (1st Cir. 1991). But, none of the complaints in those cases pled claims for both intentional and unintentional torts and incorporated by reference facts that pertained to the former to support the latter in the way that the complaint at issue here does. Thus, none of those precedents undermines our conclusion that this complaint is fairly read to set forth -- at least in a "broad, conclusory" fashion, Travelers, 414 A.2d at 226 -- factual allegations of negligent conduct by Electricity Maine. Accordingly, none of those precedents supplies a basis for concluding that this complaint fails to allege facts that fall within the risk insured by the Policy, at least insofar as that risk is defined by the Policy's definition of an "occurrence." Id.

## III.

Zurich separately contends that the Policy's definition of "bodily injury" does not encompass the allegations of misconduct

by Electricity Maine contained in the complaint at issue. Thus, the company contends, for this reason as well, that the complaint fails to contain factual allegations that fall within the risk insured.

Electricity Maine acknowledges that the complaint does not allege that its conduct caused "bodily injury." The company contends, however, that Harlor makes clear that the complaint need not do so to trigger Zurich's duty to defend. We agree.

In Harlor, as in this case, the underlying complaint did not allege "bodily injury." Harlor, 150 A.3d at 800. Nevertheless, the Law Court held that the insurer in that case had a duty to defend under the policy at issue, because the tortious conduct alleged in the complaint in the underlying action "could have resulted in . . . bodily harm due to emotional distress." Id.; see also York Ins. Grp. of Me. v. Lambert, 740 A.2d 984, 985-86 (Me. 1999) (holding the same). Moreover, Harlor reached that conclusion even though the complaint in that underlying action did not expressly allege "emotional distress." Harlor, 150 A.3d at 800.

Zurich contends that the Policy expressly defines "bodily injury" to encompass "mental injury, shock, [or] fright . . . resulting from bodily injury . . . ." (Emphasis added). Zurich then goes on to argue that, in consequence, the Policy's definition of "bodily injury" is best read, impliedly, to

exclude from its scope "bodily injury" that is caused by emotional distress. And, Zurich contends, this definition of "bodily injury" differs from the definition of "bodily injury" used in the policy that was at issue in either Harlor or York, such that neither precedent supports Electricity Maine's position here.

But, while the Policy's definition of "bodily injury" states that it "<u>includes</u>" "mental injury, shock, [or] fright resulting from bodily injury," (emphasis added), the definition does not state that it <u>excludes</u> coverage for "bodily injury" caused by those markers of emotional distress. Thus, because Maine law requires us to construe ambiguous policy language in favor of the insured, we reject Zurich's restrictive construction of the Policy. See <u>Foremost Ins. Co.</u> v. <u>Levesque</u>, 868 A.2d 244, 246 (Me. 2005) ("Any ambiguity in an insurance policy must be resolved against the insurer and in favor of coverage.").

Zurich has one last argument for why, <u>Harlor</u> notwithstanding, the inclusion of the negligent misrepresentation and negligence claims provides no basis for concluding that the complaint sets forth factual allegations that fall within the "risk insured," at least insofar as the Policy's definition of "bodily injury" establishes the risk that Zurich has agreed to insure. Zurich points out that a claim for "negligent misrepresentation" cannot give rise to damages for emotional distress under Maine law, see <u>Veilleux</u> v. <u>National Broadcasting Co.</u>, 206 F.3d 92, 130

- 10 -

(1st Cir. 2000), and thus that the negligent misrepresentation claim here cannot be treated as one that seeks damages -- even potentially -- for bodily injury that arises from such emotional distress. Zurich further contends that the putatively stand-alone negligence claim is in fact just a mirror of the claim that Electricity Maine committed the tort of negligent misrepresentation. Accordingly, Zurich argues that, even though damages for emotional distress often may be recovered for a negligence claim, see Curran v. Richardson, F. Supp. 2d 228, 231 (D. Me. 2006) (citing Curtis v. Porter, 784 A.2d 18, 27 (Me. 2001)), the negligence claim that is set forth in the complaint at issue here cannot.

But, Zurich's argument overlooks the fact that the Law Court has, in construing Maine law, held that claims involving negligent omissions for which there was no statutory duty to disclose were not negligent misrepresentation claims, but were, instead, more appropriately characterized as pure negligence claims. See Binette v. Dyer Library Ass'n, 688 A.2d 898, 905-06 (Me. 1996). Here, the face of the complaint is fairly read to permit the conclusion that the negligence claim includes allegations of negligent omissions of just that sort. The complaint alleges that Electricity Maine failed to notify its customers that their contracts would "automatically renew" at higher rates and, similarly, failed to notify its customers that

- 11 -

they would face a $100 termination fee if they attempted to leave their contracts. Thus, in accord with Auto Europe, we conclude that, even though "a narrow reading of the complaint's factual allegations might preclude coverage . . . the alleged cause of action is sufficiently broad that a modified version of the facts could be developed at trial to show liability." 321 F.3d at 68.

Zurich does make the sweeping contention in its reply brief that emotional distress damages under Maine law may be recovered in negligence claims only for conduct that resulted in physical injuries, presumably to support the contention that damages may not be recovered in such claims for physical injuries that result from emotional distress. But, aside from the fact that arguments that are made for the first time in reply briefs are waived, see United States v. Torres, 162 F.3d 6, 11 (1st Cir. 1998), Zurich does not cite to any precedent that supports its broad assertion about the limited circumstances in which damages for emotional distress may be recovered for the tort of negligence in Maine. Nor does Zurich address the fact that the Law Court stated in Curtis that "most tort actions" can give rise to recovery for emotional distress. Curtis, 784 A.2d at 26. Thus, we treat as waived for lack of development any argument that a negligence claim for an omission such as was alleged to have occurred here cannot give rise to emotional distress damages under Maine law. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

- 12 -

None of this is to deny that one might doubt whether, in the context of this case, the alleged negligence is of a type that could cause distress that would result in bodily injury. But, the Law Court has made clear that, for purposes of Maine insurance law, where "general allegations for the particular claims asserted in the underlying complaint . . . could potentially support an award of covered damages for bodily injury caused by emotional distress," the duty to defend exists. Harlor, 150 A.3d at 799 (emphasis added).

## IV.

For the foregoing reasons we **affirm** the District Court's decisions granting summary judgment in favor of Electricity Maine and denying the appellants' Motion for Summary Judgment. The parties shall bear their own costs.